**UNITED STATES, Appellee,**

v.

**Sergeant First Class Clem A. HOOD, SSN 229–38–2688, United States Army, Appellant.**

**CM 441047.**

U. S. Army Court of Military Review.

28 Jan. 1982.

---

Colonel Edward S. Adamkewicz, Jr., JAGC, Major Raymond C. Ruppert, JAGC, Captain Dennis E. Brower, JAGC, and Captain Richard W. Vitaris, JAGC, were on the pleadings for appellant.

Colonel R. R. Boller, JAGC, Major John T. Meixell, JAGC, Captain Peter M. Donawick, JAGC, Captain Michael R. Smythers, JAGC, and Major Michael L. DeBusk, JAGC, were on the pleadings for appellee.

Before MITCHELL, MILLER and LEWIS, Appellate Military Judges.

## OPINION OF THE COURT

MITCHELL, Senior Judge:

What may well be described as another symptom of the disease besetting the regulation of black-marketing in Korea has brought to this Court a controversy over the value of the contraband goods in this illicit commerce. Drawn into issue by the defendant's appeal [1] is the testimony of a Government witness asserting that an individual would be able to obtain double or triple the prevailing value for an item when sold on the illegal market.

During the sentencing phase of the proceedings below, the Government called Criminal Investigation Command (CID) Agent Hambrick as a witness in aggravation. He testified, over defense objection, as to the black market value of the items (television sets, video recorders, cassette/radio players, and stereos) which the appellant pleaded guilty to dealing in. In support of his qualifications, he testified that he had been stationed in the Korea area on-and-off for five years and as an agent he had personally handled fifty or so black market cases. Additionally, he stated that, on a monthly basis, he reviewed official statistical information for the previous year regarding black market activities. This information included the current value for various items (including items similar to those involved in this case) sold on the black

---

1. In accordance with his pleas, appellant was convicted of violating a lawful general regulation by wrongfully selling (three specifications) and wrongfully loaning (one specification) property imported free of custom duties to an individual not authorized duty-free privileges, signing a false official record (eighteen specifications), and larceny (twenty-seven specifications) in violation of Articles 92, 107, and 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 892, 907, and 921 (1976). On motion of the Government, the military judge dismissed six specifications alleging forgery in violation of Article 123, UCMJ, 10 U.S.C. § 923. The officer members sentenced appellant to a dishonorable discharge, confinement at hard labor for eight years, total forfeitures, a $10,000 fine, and reduction to Private E–1. The convening authority approved only so much of the sentence as provided for a dishonorable discharge, confinement for five years, total forfeitures, and reduction to Private E–1. He further suspended for eighteen months the approved confinement in excess of three years with provision for automatic remission.

market. In his opinion, the seller would be able to obtain double or triple the value when placed in the illicit commerce. This opinion was offered in support of the prosecutor's inference that the appellant reaped very substantial gains from his thefts. In line with this valuation, the Government sought to show that the court-martial members should not be reluctant to deprive the appellant of his retirement benefits since his income from the resale of the stolen goods was an amount in excess of appellant's accrued retirement benefits. The Government used a chart to compare the two. The chart speculated that, by the time the forty-year old appellant reached age seventy (estimated life expectancy), his invested ill-gotten gains, which the prosecutor posited at approximately $50,000.00 ($18,000 cash stolen from CID funds plus $11,000.00 in stolen electronic property multiplied by three) would be worth in excess of $3,000,000.00. In contrast, the chart indicated the retirement benefits of an E–7 would only be worth $240,000.00 over the same period.

We find that the trial judge did not abuse his discretion in admitting Special Agent Hambrick's testimony and we affirm.

The overwhelming weight of civilian authorities and the Military Rules of Evidence provide that the valuation of property may be proved by a witness who is qualified to express an opinion as to value.[2] Inasmuch as the appellant pleaded guilty to larceny and customs violations, evidence of aggravating circumstances was admissible to aid the court members in their deliberation on an appropriate sentence. See paragraph 75 b(3), Manual for Courts-Martial, United States, 1969 (Revised edition). Therefore, it follows that the testimony of Special Agent Hambrick, who was qualified as an expert in matters of potential profit on the Korean black market, was admissible under the Military Rules of Evidence 702.[3] The evidence was not hearsay[4] and was both relevant and probative in determining an appropriate sentence.[5]

Assuming, arguendo, that the military judge should not have allowed the testimony of the CID agent, we do not find reversible error. The appellant suffered no prejudice inasmuch as the convening authority disapproved the $10,000.00 fine and the appellant was protected by a lenient pretrial agreement. Considering the seriousness of the offenses we cannot perceive a sentence that did not include a punitive discharge.

Accordingly, the findings of guilty and the sentence are affirmed.

Judge MILLER and Judge LEWIS concur.

---

2. Paragraph 200a(7), Manual for Courts-Martial, United States, 1969 (Revised edition). See generally Am.Jur. Proof of Facts § 499 (1959); McCormick's Handbook of the Law of Evidence §§ 13–17 (E. Cleary, 2d ed. 1972); J. Munster and M. Larkin, Military Evidence § 8.13 (2d. 1978); S. Saltzburg and K. Redden, Federal Rules of Evidence Manual (1977) 413–445 (2d ed.supp. 1980); S. Saltzburg, L. Schinasi, and D. Schlueter, Military Rules of Evidence Manual, 322–328 (1981); 3 J. Weinstein and M. Berger, Weinstein's Evidence § 702 (1981); 2 Wharton's Criminal Evidence § 620 (C. Toria, 13th ed. 1973); and 7 Wigmore, Evidence §§ 1940–1943 (Chadbourn, rev. 1978).

3. Mil.R.Evid. 702 provides:
   If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Additionally, Mil.R.Evid. 703 permits an expert to base his opinion upon facts or data that he has reviewed or that he has been told about in order to form his opinion. See Mil.R.Evid. 703 and S. Saltzburg, L. Schinasi, and D. Schlueter, Military Rules of Evidence Manual, Editorial Comment, supra.

4. Mil.R.Evid. 801(c).

5. Mil.R.Evid. 401. Any suggestion that the evidence, although relevant, was inadmissible because its probative value was outweighed by the danger that it would result in (1) unfair prejudice, (2) confusion, (3) mislead the court members, (4) cause undue delay, (5) waste time, or (6) be needlessly cumulative, has been dispelled by the military judge's ruling admitting the evidence. The trial judge's ruling is, however reviewable by an appellate court if he abused his wide discretion by admitting the evidence. Mil.R.Evid. 403.