**UNITED STATES**

v.

**Major Richard W. BAASEL,
511–44–8846 FR United
States Air Force.**

**ACM 25008.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 21 April 1983.

Decided 14 March 1986.

---

1. The appellee's Motion for Leave to File Documents dated 14 February 1986 is granted.

Appellate Counsel for the Accused: Colonel Leo L. Sergi and Major Charles E. Ambrose, Jr.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert and Major David F. Barton.

Before FORAY, MURDOCK and O'HAIR, Appellate Military Judges.

## DECISION

O'HAIR, Judge:

Appellant was convicted, contrary to his pleas, of writing 44 checks and thereafter dishonorably failing to maintain sufficient funds in his checking accounts for payment, in violation of Article 134, U.C.M.J., 10 U.S.C. § 934;[1] of making two fraudulent claims against the United States, in violation of Article 132, U.C.M.J., 10 U.S.C. § 932; and of five specifications alleging a dishonorable failure to pay just debts, in violation of Article 133, U.C.M.J., 10 U.S.C. § 933. He was acquitted of two larceny specifications under Article 121, U.C.M.J., 10 U.S.C. § 921, which addressed the same conduct described in the fraudulent claim specifications. The approved sentence included a dismissal from the service and two years of confinement, with one year suspended. He now raises two issues on appeal. In the first, appellant alleges he was deprived of his rights under the Sixth Amendment to the Constitution in that he was denied full access to his defense counsel; and in the second he alleges the military judge erred by prohibiting him from presenting expert testimony upon a defense of insanity. We find no error and affirm.

As presented in a very lengthy trial, the facts disclose that appellant was diagnosed as being a pathological gambler.[2] Apparently his gambling activities consumed more financial resources than his military income could support, so he resorted to the funds-generating conduct which culminated in this courtmartial. The court below found that between November, 1983 and September, 1984 appellant wrote approximately $6400 worth of personal checks and thereafter dishonorably failed to maintain sufficient funds for payment on presentment. He also submitted two false claims against the government in the form of

---

1. 42 of these checks were charged under Article 123a, U.C.M.J., 10 U.S.C. § 923a but appellant was found guilty of the lesser included offense under Article 134, U.C.M.J.

2. Pathological gambling (also known as compulsive gambling) is listed in the Diagnostic and Statistical Manual of Mental Disorders (Third Edition) (DSM III) as a disorder of impulse control and not as a mental disease or defect. According to DSM III, this disorder is characterized by a chronic and progressive failure to resist impulses to gamble.

fraudulent advance pay travel vouchers for a total of $3300. The last charges address his failure to pay just debts to five officers following his receipt of loans from them in a total amount of $10,200.

## I

At the time of the commission of these offenses the appellant was an electronic warfare officer assigned to a strategic reconnaissance squadron where he performed duties of a classified nature. Prior to trial appellant's military and civilian defense counsel requested they be given a temporary security clearance to enable them to fully discuss his military duties and how they impacted on the charges and specifications. They argued this information was critical to their preparation of the case for trial. The convening authority denied this request, but offered to appoint an officer who was not an attorney as a member of the defense team. The defense consented to this procedure and Lt Col R., who had a security clearance equal to or higher than the appellant, was assigned to assist in the defense. This was done with the understanding that all conversations Lt Col R. had with appellant would be confidential and he would never be called as a witness by the government. As was explained in detail at trial by the military judge, whenever the appellant wished to provide information to his defense counsel which he suspected might be classified, he was to write it down on paper. Lt Col R. would then glean the writing for any classified information; if any such material were found, the military judge would invoke the procedures contained in Mil.R.Evid. 505. In actuality the court never reached that point. The defense counsel complained at trial, as they do on appeal, that they could not fully communicate with their client using this method; that no attorney ever

heard what appellant wanted to discuss with his counsel. In response to this, the military judge regularly and frequently inquired of Lt Col R. whether he had used the procedure the judge suggested and whether it had been necessary for him to delete or excise any information offered by appellant to his defense counsel. On each occasion, the answer was that no classified information had been provided by appellant and, therefore, no information had been withheld from the counsel.

■ We are not unmindful of the inconvenience and additional time such a procedure caused the defense counsel in the furtherance of their case. It would have been more expedient if the counsel had been able to directly converse with appellant on all aspects of the case. However, what is important to our decision on this matter is that even though the process was time-consuming, no information supplied by appellant was withheld from his defense counsel. Therefore, in the absence of any significant impediment which prevented full and effective communications during the defense process, we find the appellant was not deprived of his constitutional rights under the Sixth Amendment to have the assistance of counsel for his defense.

## II

In anticipation of an insanity defense, the trial counsel submitted a motion *in limine* to prevent two defense expert witnesses, Dr. Taber and Dr. Custer, from testifying that appellant, as a pathological gambler, lacked substantial capacity to conform his conduct to the requirements of the law prohibiting such conduct as writing bad checks, making false claims and failing to pay just debts.[3] Specifically, the trial counsel argued, first, these witnesses were not qualified under *Frye*[4] to arrive at this con-

---

**3.** The American Law Institute (ALI) test for insanity was adopted for use in military courts in the case of *United States v. Frederick,* 3 M.J. 230 (C.M.A.1977). That test provides that a person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity

either to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law.

**4.** In *Frye v. United States,* 293 F. 1013, 1014, (D.C.Cir.1923) the court explained that "while courts will go a long way in admitting expert

clusion and, secondly, the causal link between pathological gambling and the offenses charged was not accepted by the community of expertise within the mental health fields. After much testimony and arguments from both sides, the military judge ruled in favor of the government. These two experts were only permitted to testify regarding the diagnosis and treatment of pathological gambling as it affected appellant's ability to form the specific intent to commit the offenses charged under Articles 123a and 121, U.C.M.J.; they were not permitted to testify how this diagnosis affected his ability to commit the remaining general intent crimes. Thus, appellant was not permitted to present this testimony as evidence of insanity.

The ruling on the motion was primarily based upon the treatment this novel defense has received in the last few years in federal courts. In the case authority cited by the military judge the courts have unanimously rejected the defense of insanity based upon pathological gambling. In each instance, the defense was unable to demonstrate there was general acceptance in the field of psychiatry and psychology of the principle that pathological gamblers lack substantive capacity to conform their conduct to the requirements of laws prohibiting offenses similar to those before the court. In the case before us the military judge further commented on the absence of any other evidence, either from appellant's expert witnesses or the DSM III, to convince him that this principle is generally accepted in the mental health community. In our view, the military judge was correct in his treatment of this expert testimony from Drs. Taber and Custer.

Our discussion of this subject must begin with Mil.R.Evid. 702, Testimony by Experts, which prescribes:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Although the military judge found no military cases which have fully analyzed the application of Mil.R.Evid. 702 to expert testimony on the subject of pathological gambling, he relied upon several federal court cases which have applied Federal Rules of Evidence (Fed.R.Evid.) 702, which is identical to our Mil.R.Evid. 702. The most significant of these cases is *United States v. Lewellyn*, 723 F.2d 615 (8th Cir.1983) in which the district court's exclusion of identical testimony from the same two experts, Dr. Taber and Dr. Custer, was affirmed. The 8th Circuit's decision is based upon the *Frye* test whereas the trial court held "as a matter of law that in a prosecution for embezzlement a defendant may not rely on a theory of insanity by reason of pathological gambling." The court in *Lewellyn, supra*, concluded that not only did the experts' testimony not possess the requisite indicia of scientific reliability, but it also failed to establish the defendant's theory that some pathological gamblers lack substantial capacity to conform their conduct to the requirements of laws prohibiting embezzlement and other similar offenses.

The holding in *Lewellyn, supra*, was followed in both *United States v. Gould*, 741 F.2d 45 (4th Cir.1984) and *United States v. Torniero*, 735 F.2d 725 (2nd Cir.1984). *Gould, supra*, involved interstate transportation of stolen property and *Torniero, supra*, involved unlawful entry of a bank with intent to commit specific intent theft-type charges, robbery and larceny. In *Torniero, supra*, the Second Circuit Court of Appeals affirmed the district court's exclusion of the evidence of pathological gambling because of "the absence of a nexus between the urge to gamble and the offense charged." The approach used by the Fourth Circuit in *Gould, supra*, was one of relevancy under Fed.R.Evid. 401 holding that "the proper test of foundational rele-

---

testimony deduced from a well-recognized scientific principle or discovery, the very thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs."

vance is whether the general scientific hypothesis of a putative causal relationship between a specific disorder and specific conduct has *substantial acceptance* in the relevant discipline." *Gould, supra,* at 49.

In a more recent federal case, *United States v. Gillis,* 773 F.2d 549 (4th Cir.1985), this same discussion is continued. Gillis was convicted of interstate transportation of stolen cars and forged securities. Gillis attempted to present an insanity defense based upon a theory of pathological gambling. The jury was instructed that pathological gambling was not a mental disease or defect and, therefore, did not satisfy the ALI test. In affirming the lower court decision, the appellate court, as they did in *Gould, supra,* examined the relevance of the evidence of this "newly-identified" disorder and found it did not meet the test of foundational relevance.

■ Without question, the common thread linking the above cited federal cases which have wrestled with this same evidentiary problem is really one of relevancy under Mil.R.Evid. 401. The appellant avers pathological gambling is a mental disease or defect from which is derived an inability to conform one's conduct to the requirements of the law. The fact that appellant's two expert witnesses could not support their averment that this proposition commands *substantial acceptance* in the community of mental health professionals convinces us the military judge did not abuse his discretion by limiting the application of this evidence to only the specific intent crimes charged under Articles 121 and 123a, U.C.M.J.[5] The evidence was properly excluded from all other uses. The findings of guilty and the sentence are

AFFIRMED.

FORAY, Senior Judge, and MURDOCK, Judge, concur.

---

**5.** Although the charge alleging fraudulent claims under Article 132, U.C.M.J., is also considered a specific intent crime, appellant chose to defend this charge on the basis of mistake of fact rather than alleging a partial mental responsibility.