**UNITED STATES**

v.

**Staff Sergeant John W. PROCTOR, Jr., FR296–54–4221, United States Air Force.**

**ACM 27931 (f rev).**

U.S. Air Force Court of Military Review.

Sentence Adjudged 12 April 1989.

Decided 7 Jan. 1992.

find no prejudicial error as to either findings or sentence and affirm, but some discussion of each error is appropriate.

## MENTAL CAPACITY TO STAND TRIAL

■ Appellate defense counsel argue that the trial judge erred when he ruled the appellant had the mental capacity to stand trial. An accused is presumed to be competent, and when the defense raises the issue, it carries the burden of proving by a preponderance of the evidence that the accused is not competent to stand trial. R.C.M. 909(b) and (c)(2).

At trial the defense sought to meet its burden of proof by the testimony of the appellant and Dr. Luigi Piciucco, a clinical psychologist, who diagnosed the appellant as a psychotic suffering from a delusional disorder, grandiose type. Dr. Piciucco stated that the appellant could understand the nature of the proceedings, i.e., who the participants were, what charges were involved, and why he was there, but he could not "rationally cooperate in his own defense." The appellant did not suffer from hallucinations, which are auditory or visual events, but from a delusion. A delusion, according to Dr. Piciucco, is a false thought that cannot be corrected by reason and is idiosyncratic. An essential feature of the appellant's disorder is the presence of a persistent, non-bizarre delusion. Dr. Piciucco stated that the appellant's belief that God would extricate him from his present predicament was an example of the appellant's delusional thought processes that were contrary to "external reality." Appellate defense counsel acknowledge that their client's religious beliefs and statements appear to be the same as a fundamentalist theology, but they urge that the irrational basis of his views demonstrates that his theology is unique and bizarre. In summary, they maintain the appellant lives in a world of his own created by a delusional disorder.

Testifying on the limited issue of his mental capacity to stand trial, the appellant stated he became a minister in the Greater Mountain Eagle Missionary Baptist Church

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair, Colonel Jeffrey R. Owens, and Major George P. Clark.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Colonel Robert E. Giovagnoni, Lieutenant Colonel Brenda J. Hollis, Major Terry M. Petrie, Major Paul H. Blackwell, Jr., Major Morris D. Davis, Captain David G. Nix, and Captain James C. Sinwell.

Before HODGSON, McLAUTHLIN and JAMES, Appellate Military Judges.

## OPINION OF THE COURT UPON FURTHER REVIEW

HODGSON, Senior Judge:

Staff Sergeant Proctor was convicted by a military judge sitting alone of multiple allegations of indecent acts and assault on children under 16 years of age. The approved sentence consists of a dishonorable discharge, 30 years confinement, total forfeitures, and reduction to E–1.

The paramount issue before us is the appellant's mental capacity to stand trial. There are 11 other assigned errors. We

when he was 17. His denomination has a fundamentalist approach to faith and believes in the literal meaning of the Bible. He indicated that God speaks to him "in [his] head" from time to time and that he has developed a close relationship with God over the years. After he was placed in pretrial confinement he said he experienced a significant growth in his personal faith brought about by a series of "miracles." According to the appellant, these miracles began when he was placed on a suicide watch after he said he decided to "fast and pray and find out if God was talking to me or I was losing my mind." Because he was a "Suicide Risk," the appellant said they "took all my clothes except for my underwear ... and left me in a cell with a blanket." Suffering from the cold, he prayed for his clothes to be given him before having to see a psychiatrist, and they were; God told him to wash his hair every morning, and he had hot water when no one else did; and God confirmed his presence by allowing him to see stars at night on special occasions, despite the bright lights of the compound.

These miracles convinced him of the importance of faith, including God's order that he plead not guilty to show people the power of faith when he would be freed from sentencing. This act of God's deliverance would enable him to establish a corporation, Faith Unlimited, to spread the message of the importance of ultimate faith.

Appellate defense counsel assert that the appellant's testimony together with his belief that mundane events, i.e., warm clothing, hot water, etc., were "miracles" demonstrate that his ideas are "illogical and irrational," and are a manifestation of his delusional disorder. Appellate counsel also point out that the appellant withdrew from a favorable pretrial agreement and discharged the attorney who was to handle the sentencing portion of the trial based on

his belief that God would make that portion of the trial unnecessary. In short, appellate counsel claim that the decisions the appellant made during the trial clearly establish that he is totally divorced from the real world and incapable of cooperating in his defense.

In rebuttal the government offered the opinion of two board-certified psychiatrists, Dr. (Maj.) Donald Geeze, Chief of Mental Health Services, Kadena Air Base, and Dr. (Maj.) Prathbia Ram, Chief of Inpatient Psychiatric Service, David Grant Medical Center, Travis Air Force Base. Dr. Geeze first met the appellant in October 1987, pursuant to a command-directed psychiatric evaluation. After several interviews, Dr. Geeze diagnosed the appellant as having a narcissistic personality disorder. Dr. Geeze continued to treat the appellant individually and in a group setting. The last group therapy session was on 17 February 1988.

Dr. Geeze was a member of the mental examination board held on 12 December 1988. It concluded that the appellant suffered from pedophilia, an adjustment disorder with depressed mood, and a narcissistic personality disorder. The board also found that the appellant had no mental disease or defect, and possessed the mental capacity to stand trial.

Dr. Ram first met the appellant in February 1989, while the appellant was a patient at David Grant. According to Dr. Ram, the appellant explained during group therapy sessions how his relationship with God was not unique, and "God can talk to any one of us. The problem is, most of us don't take time out to sit and listen, and anyone can have a special relationship with God." Dr. Ram had at least 10 one-on-one sessions with the appellant during the month he was at David Grant. While Dr. Ram was not a member of the second mental examination board,[1] she presented the ap-

---

1. In May 1990, this Court ordered a third mental examination board because we were concerned with the "appellant's capacity to assist with his appellate review." Interlocutory Order, *United States v. Proctor*, 8 May 1990, 1990 WL 79243. This psychiatric evaluation was conducted at the U.S. Disciplinary Barracks, Fort

Leavenworth, Kansas between 21 May and 2 July 1990. The mental examination board concluded that the appellant had no severe mental disease or defect and had sufficient mental capacity to understand the nature of both the trial and appellate proceedings. Their clinical psychiatric diagnosis stated: pedophile, fixated

pellant's medical history to the board. On 10 March 1989, the mental examination board unanimously diagnosed the appellant as suffering from pedophilia and a personality disorder not otherwise specified. They concluded that the appellant could intelligently assist in the preparation and presentation of his case. Dr. Ram's own diagnosis differed only slightly from the board's: pedophilia, and personality disorder, not otherwise specified, with predominant narcissistic and anti-social characteristics.

Whether an accused has the mental capacity to stand trial is an interlocutory factual question for the trial judge. R.C.M. 909(c)(1). Here, after sifting the various opinions of expert witnesses, the trial judge found that the appellant had "coherency of ideas and control of his mental faculties, as well as the requisite power of memory to allow him to testify in his own behalf, if he desires." The judge also observed that the appellant has at least average intelligence and is able to express himself readily, clearly, and effectively. He heard the opinion of Dr. Piciucco, a clinical psychologist, that the appellant had a delusional disorder that rendered the appellant unable to cooperate intelligently with counsel. He heard the appellant testify. The trial judge also had before him the testimony of two board-certified psychiatrists, Drs. Geeze and Ram, who held a contrary view and stated that the appellant had no delusional disorder and could fully assist counsel in the conduct of the case. The judge considered the findings of two mental examination boards, both of which stated that the appellant had no mental disease or defect and had the mental capacity to cooperate with counsel in his defense. All told, the appellant was examined by a clinical psychologist and by at least six psychiatrists, none of whom thought that he lacked the mental capacity to stand trial.

After a review of the record, we are convinced there is ample evidence to support the trial judge's ruling that the appellant was competent to stand trial. There is no indication the judge abused his discretion in reaching that finding or that he was otherwise incorrect. Article 66(c), 10 U.S.C. § 866(c); *United States v. Lee,* 22 M.J. 767 (A.F.C.M.R.1986).

## ASSISTANT DEFENSE COUNSEL AS WITNESS ON COMPETENCY MOTION

■ At trial the defense requested a "limited severance of the attorney-client relationship between [the appellant] and [the assistant defense counsel] for the purpose of the capacity hearing so that she can testify as a witness." The assistant defense counsel stated she would "feel more comfortable ... [if there were a] judicial ruling [relieving] me [of the] attorney-client privilege for the limited purpose of testifying during the competence motion...." Later, the lead defense counsel withdrew the request and indicated he had more of a "court-order" in mind.

Subsequently, the appellant, in writing, discharged the assistant defense counsel from the case. However, the trial judge did not release her from any attorney-client privileges. While she did testify on the motion to close the court to spectators during the hearing on the capacity to stand trial motion, lead counsel emphasized that none of her testimony would cause her to breach the attorney-client privilege. At the close of the competency motion, the trial judge twice asked the defense if it had any additional witnesses. Each time the answer was no.

■ Appellate defense counsel now argue that the judge should have ordered the assistant defense counsel to testify on the motion since she "might have valuable observations and evidence relevant to her client's mental capacity...." We disagree. The choice of witnesses to call in support of a motion is the decision of the moving

type, factitious disorder with psychological symptoms. They concluded the appellant suffered from a significant personality disorder. They further stated this personality diagnosis could account for his unusual belief that he is on a mission from God. We may, of course, consider this report in assessing the appellant's capacity to stand trial. *See United States v. Massey,* 27 M.J. 371 (C.M.A.1989).

party. Obviously, lead counsel did not think what the assistant defense counsel had to offer was vital or he would have called her as a witness. In truth, it is difficult to see what she could say that was relevant and had not already been said. The appellant had already testified at length, and a clinical psychologist had stated his opinion that the appellant was not competent to stand trial. No doubt lead counsel concluded her testimony was cumulative and decided to forgo it. We resolve this issue against the appellant.

### DENIAL OF CONTINUANCE TO OBTAIN REBUTTAL EVIDENCE

■ In February 1989, in a letter from appellant's defense counsel, the second mental examination board was asked, "Is SSgt Proctor presently suffering from a delusional (paranoid) disorder, grandiose type?" Dr. Ram stated she discussed the letter with the medical law consultant at Travis Air Force Base who advised her she was to answer the formal questions previously submitted to the mental examination board.

On 1 April, while the trial was in session, the trial defense counsel made an offer of proof that he had contacted the medical law consultant who indicated he had no such conversation with Dr. Ram. Defense counsel stated that an affidavit to this effect was being data-faxed from Travis and should arrive shortly.

Two days later, 3 April, the affidavit still had not arrived, and the defense counsel suggested that it might never come as the medical law consultant appeared hesitant about providing such a document. At this point the trial judge rejected delaying the trial any longer.

The decision to grant or deny a continuance is within the broad discretion of the trial judge and will be overturned only where there is a clear abuse of discretion. *United States v. Thomas*, 22 M.J. 57 (C.M.A.1986). Given the possibility that the affidavit might never arrive, we see no error in the judge denying the continuance request. Further, the affidavit itself in-

volved the possible impeachment of a witness on a collateral matter having no direct bearing on the appellant's mental capacity to stand trial. The use of such a document as impeachment is highly questionable. *See United States v. Tyler*, 26 M.J. 680 (A.F.C.M.R.1988), *aff'd*, 28 M.J. 253 (C.M.A.1989).

In a related matter, appellate defense counsel claim the record is not verbatim because it fails to contain the missing affidavit. In this regard the record contains the following exchange between the trial defense counsel and the trial judge:

> DC: Without indicating what's in it, that affidavit which I alluded to in an earlier portion of this trial has arrived I understand. We would like to present it to the court for whatever value it has for you, Your Honor. But I feel that it is necessary that sometime during this trial I present that affidavit.
>
> MJ: You'd like it marked as an Appellate Exhibit for review purposes?
>
> DC: Yes, Your Honor. I do not have it in hand, but it is being obtained right now.
>
> MJ: I guess what I'd say is I'd take that up towards the end of the trial.
>
> DC: Yes, Your Honor. Okay, fine.

■ As we read this exchange, the trial defense counsel was to offer the affidavit as an allied paper or appellate exhibit once he *actually received it.* There is no indication in the record that the missing document was ever offered to the trial judge. R.C.M. 1103(b)(3)(B). Its absence as a part of the transcript leaves open two possibilities: 1) It never arrived; and 2) It arrived, but the contents were not helpful to the defense. In any event, missing exhibits may make a record of trial materially deficient but do not detract from its "verbatimness." *United States v. Eubank*, 12 M.J. 752 (A.F.C.M.R.1981). The appellant's record of trial is complete.

### PRO SE REPRESENTATION

Appellate defense counsel argue that the trial judge abused his discretion in allowing the appellant to represent himself when he

was so "obviously disturbed." They further contend that the trial judge also failed to adequately question the appellant to see if he fully understood what defending himself entailed.

Permitting an accused to defend himself places a trial judge squarely between Scylla and Charybdis—if he refuses, the accused will claim he has been denied his right to self-representation. *See United States v. Tanner*, 16 M.J. 930 (N.M.C.M.R. 1983) (accused denied fundamental right of self-representation). Conversely, if the judge allows self-representation, the claim will be that the accused was incapable of defending himself and did not fully understand the perils of acting as his own lawyer. *See United States v. Mogavero*, 20 M.J. 762 (A.F.C.M.R.1985), *pet. denied*, 21 M.J. 22 (C.M.A.1985); *United States v. Mix*, 32 M.J. 974 (A.C.M.R.1991) (trial judge properly allowed accused to defend himself).

█ Before allowing the appellant to defend himself, the trial judge warned him of the perils of self-representation, that he would be bound by the rules of evidence, and that his appointed defense counsel would only be available as a technical consultant. R.C.M. 506(d). The judge also advised the appellant of his forum choices, maximum punishment, opportunity to voir dire the judge or members, various stages of the trial, right against self-incrimination, elements of the specifications, and the prosecution's burden of proof. *Id.* The trial judge further ascertained that the appellant had 2 years of college and had defended himself in traffic court, albeit unsuccessfully. The appellant indicated he understood the hazards he faced by acting as his own lawyer. *Id.*

Based upon his questions and the appellant's replies, the trial judge granted the appellant's request to defend himself. Our reading of the record convinces us the trial judge was correct in granting the appellant's request for self-representation. *United States v. Mogavero, supra.* Thereafter, the appellant entered a not guilty plea and elected to be tried by members.

His appointed counsel was permitted to sit at the counsel table.

█ The appellant's self-representation only lasted overnight. The next morning he refused to enter the courtroom and refused to speak. Later, he requested that his appointed counsel again represent him. At that time the appellant, through counsel, requested a bench trial, and his request was granted.

Even if we were to assume that the trial judge erred in allowing the appellant to represent himself for this short period, we discern no prejudice. The appellant was allowed to withdraw his *pro se* request for members and have a bench trial. Further, entering a not guilty plea can hardly be seen as prejudicial error. The appellant represented himself for only a short time during which he made two decisions—one was withdrawn and the other ratified after the return of counsel. Thus, there are no pro se decisions left which could have harmed the appellant.

### FAILURE OF MILITARY JUDGE TO RECUSE HIMSELF

█ R.C.M. 902(a) requires a military judge to disqualify himself or herself in any proceeding in which his or her impartiality might reasonably be questioned. Here, appellate defense counsel urge that the trial judge's exposure to 6 days of testimony about the appellant's past, his history of mental problems plus observing the appellant's odd behavior in court, had to affect his ability to keep an open mind on the question of guilt or innocence. The trial judge stated he had considered withdrawing from the case, but he concluded that was not necessary since his findings on the capacity motion would have no effect in determining the appellant's credibility. Appellate counsel acknowledge that the trial defense counsel, after a voir dire of the trial judge, did not challenge him for cause. Appellate counsel, nevertheless, claim the judge should have removed himself *sua sponte* from the case. They argue that the weight of the evidence overwhelmingly demonstrates that the judge's decision not to disqualify himself was either

"clearly erroneous" or "clearly unreasonable." *See United States v. Travers*, 25 M.J. 61 (C.M.A.1987); *United States v. Melton*, 1 M.J. 528 (A.F.C.M.R.1975).

▇▇ We disagree. First, a military judge's disclaimer of bias or partiality carries great weight. *United States v. Clark*, 31 M.J. 721 (A.F.C.M.R.1990). Second, any disqualifying knowledge a trial judge has of the case in which he is sitting must be "personal." Further, "personal," as used in the context of disqualifying a judge, must come from an extrajudicial source and not as a result of what he learned from his participation in the case. *United States v. Soriano*, 20 M.J. 337 (C.M.A.1985); *United States v. Kratzenburg*, 20 M.J. 670 (A.F.C.M.R.1985). Here, any knowledge the judge had of the appellant's alleged criminal misconduct was the result of prior judicial exposure, and a military judge need not recuse himself solely on that basis. However, he could recuse himself in such a case as a matter of discretion. *United States v. Soriano, supra.*

▇▇ A trial judge has as much obligation not to recuse himself where there is no reason to, as he has when a reason exists. *United States v. Brauchler*, 15 M.J. 755 (A.F.C.M.R.1983). A trial judge's decision on recusal is tested on an abuse of discretion standard. *United States v. Elzy*, 25 M.J. 416 (C.M.A.1988). We find no abuse of discretion here.

### ADMISSION OF EVIDENCE UNDER MIL.R.EVID. 404(b)

▇▇ The trial judge admitted three books found in the appellant's quarters for the limited purpose of showing intent and motive. In his special findings he resolved the Mil.R.Evid. 403 balancing test in favor of admissibility and described the books as follows:

### SISTERS

A soft-cover book containing mostly photographs of nude young girls in their early to mid-teens. The photographs depicted, among other things, caressing, bathing, touching of breasts and other body parts, raised skirts, and bare buttocks.

### DREAMS OF A YOUNG GIRL

Also a book of mostly photographs of nude teenage girls—early to late teens. This book was more "sexually suggestive" than *Sisters*. It also contained verse characterizing the models as "young girls, adolescents, maidens, or virgins."

### SHOW ME?

### A PICTURE BOOK OF SEX FOR CHILDREN AND PARENTS

A book of 176 pages with 126 photographs and 31 pages of explanatory text. It can be viewed as a sex education book. It contained photographs of adults and adolescents in suggestive and non-suggestive poses. It displayed adults engaged in sexual intercourse and a variety of foreplay.

The trial judge found the "books, with the photographs and fantasies they represent," to be relevant under Mil.R.Evid. 401 and 404(b) to establish the motive and intent of the appellant. He observed the books depict conduct similar to the offenses charged: fondling and touching penises, breasts, and genital areas; spanking bare buttocks; watching a girl undress, bathe, and dress.

One element of indecent acts with a child is that the accused committed the acts with the intent to arouse, appeal to, or gratify the lust, passions or sexual desires of the accused, the victim, or both. MCM 1984, Part IV, para. 87b(1)(d); *see also United States v. Nastro*, 7 U.S.C.M.A. 373, 22 C.M.R. 163 (1956). Thus, the books had a valid purpose of attempting to show that the appellant had the requisite sexual desire during his conduct with the children. *United States v. Orsburn*, 31 M.J. 182 (C.M.A.1990); *see also United States v. Mann*, 26 M.J. 1 (C.M.A.1988), *cert. denied*, 488 U.S. 824, 109 S.Ct. 72, 102 L.Ed.2d 49 (1988); *United States v. Palmer*, 29 M.J. 929 (A.F.C.M.R.1989), *aff'd*, 33 M.J. 7 (C.M.A.1991). Accordingly, the trial judge

properly admitted the books for the *limited* purpose of establishing motive and intent. A judge's ruling in this area will be overturned only where there is a clear abuse of discretion. *United States v. Orsburn, supra.* We find no abuse of discretion here. Further, since this was a judge alone trial, we are confident the books were considered solely for the purpose for which they were admitted. *United States v. Montgomery,* 20 U.S.C.M.A. 35, 42 C.M.R. 227, 231 (1970).

## SUFFICIENCY OF THE EVIDENCE

■ In specifications 5 and 9 of Charge I, the appellant was convicted of committing indecent acts with two young boys by spanking them on the bare buttocks with a paddle. These "spankings" took place over a period of months with one of the boys being treated in this manner as many as 50 times.

Appellate defense counsel argue that the act of spanking children on their bare buttocks, while it may be inappropriate behavior, is not inherently indecent. They point out that indecency is defined as a form of immorality relating to sexual impurity which is not only grossly vulgar, obscene, and repugnant to common propriety, but tends to excite lust and deprave the morals with respect to sexual relations. MCM 1984, Part IV, para. 90c. Thus, the defense claims, the spankings, without anything further, do not fit the definition of "indecent."

■ Acts not inherently indecent may be rendered so by the surrounding circumstances. *United States v. Wilson,* 13 M.J. 247 (C.M.A.1982). Here, the record established that the appellant was something of a pied piper, and young boys and girls were constantly at his house. The boys, who were the victims in the specifications above, stated the spankings were a common occurrence and were sometimes followed by the appellant bathing them and washing their genital areas. While in pretrial confinement the appellant confided in a fellow prisoner that he was a "child molester," and stated "[he was] guilty and [he knew] it." Generically, a child-molester is someone who makes sexual advances toward children. *See generally Webster's Ninth New Collegiate Dictionary,* 1990 ed., pg. 764. The intent to gratify the sexual desires necessary for a conviction of committing an indecent act can be "inherent in the acts themselves." *United States v. Paulding,* 25 C.M.R. 489, 493 (A.B.R. 1957). Here, the evidence of the appellant's conduct with the boys and his acknowledgement of having a sexual penchant for children is sufficient to establish that the charged misconduct constituted indecent acts.

■ The appellant also argues that his conviction for assaulting a 13-year-old girl (specification 5 of Charge II) cannot stand because it was not unlawful as he was acting *in loco parentis* and was entitled to use reasonable force to discipline the child. He claims he had tacit retroactive approval from the father for his actions because he told him what he had done and was not reproved by the parent for his conduct. Thus, appellate defense counsel maintain that this inaction by the parent amounted to retroactive permission to "spank" the child.

■ A parent may authorize another to use reasonable force to discipline a child. *See* 6A C.J.S., *Assault & Battery,* section 98. However, the reasonableness of the force used is not the only test. The disciplining of the child must be done in good faith for the correction of the child motivated by an educational purpose and not for some malevolent motive. The purpose behind the punishment is a factual question. *See People v. Ball,* 58 Ill.2d 36, 317 N.E.2d 54 (1974).

There is ample evidence in this record from which the trial judge, sitting as a factfinder, could conclude that when the appellant hit the child he was not acting with the welfare of the child in mind. The evidence legally and factually supports a conviction for assaulting a child under 16 years old. Further, we are convinced beyond a reasonable doubt of the appellant's guilt in this matter. Article 66(c), UCMJ.

## APPELLANT'S SWORN STATEMENT DURING SENTENCING

During the sentencing portion of the trial, and after the government had made its presentation, the trial defense counsel announced that the appellant wished to make a narrative sworn statement without the assistance of counsel. *See* R.C.M. 1001(c)(2)(B).

At this time the trial judge again went over the options available to the appellant during the sentencing phase of the trial. He reminded him that if he made a sworn statement, he would be subject to cross-examination. The judge also pointed out that answering questions put to him by his counsel was less risky than a narrative statement which might disclose information that would be harmful. The appellant indicated he understood the dangers involved but said he still wanted to make a narrative statement.

As can be foreseen, the appellant's decision resulted in him revealing information that was extremely damning. For example, he stated he was planning future indecent acts when he was caught and, even at trial, still had sexual feelings toward the children. He also admitted committing the offenses.

Appellate defense counsel suggest that the trial judge should never have allowed the appellant to make a sworn statement without the assistance of counsel. They further urge that the trial judge should have expanded his questioning of the appellant by informing him of the range of punishments, the offense of perjury, Article 31, 10 U.S.C. § 831 rights, and potential mitigating and extenuating factors. They cite no authority for such an expanded inquiry but argue that the potential prejudice to an accused justifies such a requirement.

Whether to testify, and the manner by which this testimony is presented is, in our view, a decision that only an accused can make. His counsel can give advice, and even argue vigorously against the decision, but the ultimate choice is the accused's. *Accord* Air Force Rules of Professional Responsibility, rule 1.2(a) (1989);

Air Force Standards for the Administration of Criminal Justice, Defense Function, Standard 4–5.2(a)(iii) (1989). Accordingly, once the trial judge is convinced that the accused has made an intelligent and informed decision to testify during sentencing, the choice between a sworn or unsworn statement is also the accused's. Our reading of the record convinces us that the appellant made an intelligent and informed decision to give a sworn statement. It follows that he must accept the consequences, good or bad, of that decision. *Accord United States v. Mogavero*, 20 M.J. 762 (A.F.C.M.R.1985), *aff'd* 21 M.J. 22 (C.M.A.1985). The trial judge correctly allowed the appellant to testify in the manner selected by him.

## ACCESS TO COUNSEL

Before the court heard the children's testimony, the appellant requested that he be permitted to be absent from the courtroom. *See* R.C.M. 804(b)(1). Apparently, he did not want to be present when they testified. After assuring himself that the appellant did not wish to be present during that portion of the trial, the trial judge granted the appellant's request. He also arranged for a closed circuit television monitor so the appellant could see and hear the witnesses, and the judge could see him.

Here, appellate defense counsel argue that the appellant was denied a fair trial because there was no audio hookup between the appellant and his counsel. Without an audio hookup between defense counsel and the appellant, "those important moments during a witness's testimony when a client might interject important considerations or uncover a potential bias would be lost." Appellate counsel acknowledge that the trial defense counsel could leave the courtroom to speak with his client, but assert this procedure "is clumsy and ineffective."

The right to be present at one's criminal trial can be waived. R.C.M. 804; *United States v. Houtchens*, 926 F.2d 824 (9th Cir.1991); *United States v. Cook*, 20 U.S.C.M.A. 504, 43 C.M.R. 344 (1971); *see*

*also* Fed.R.Crim.P. 43(c). We will not permit an accused to waive his right to be present at his trial and then claim on appeal that his access to counsel had been restricted. To do so would make the law appear a fool. For all practical purposes the appellant was present for the trial and had access to his lawyer. The appellant got all he was entitled to and more. This assignment of error is without merit.

## SENTENCE APPROPRIATENESS

Appellant asserts his sentence to 30 years confinement is too harsh given the nature of his offenses and his good history of duty performance. Appellant was convicted of eight specifications of indecent acts with eight separate children of both genders under 16, and eight specifications of assault consummated by a battery on eight children under 16. The total number of children appellant victimized was 15—one child was the victim of both indecent acts and assault. Considering the abhorrent nature of these acts, the impact upon the many victims, the matters presented in mitigation, and all the other relevant factors, we do not find the appellant's approved sentence inappropriate. Article 66(c).

Therefore, having examined the record of trial, the assignments of error and the government's reply thereto, we conclude that the findings and sentence are correct in law and fact, the sentence is appropriate, and no error prejudicial to the substantial rights of the accused was committed. Accordingly, the findings of guilty and sentence are

AFFIRMED.

Judge McLAUTHLIN and Judge JAMES concur.