UNITED STATES

v.

**Captain Donna L. BUTCHER,**
**United States Air Force.**

ACM 33519.

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 8 July 1998.

Decided 1 June 2000.

Appellate Counsel for Appellant: Colonel Theodore J. Fink and Major Thomas R. Uiselt.

Appellate Counsel for the United States: Colonel Anthony P. Dattilo, Lieutenant Colonel Ronald A. Rodgers, and Lieutenant Colonel William B. Smith.

Before YOUNG, SPISAK, and SCHLEGEL, Senior Judges.

## OPINION OF THE COURT

SPISAK, Senior Judge:

The appellant appeals her conviction on charges of dereliction of duty for taking Percocet, a Schedule II narcotic, from the dispensing machine without proper authorization; making a false official statement; wrongful possession of Percocet; and, steal-

ing Percocet. Articles 92, 107, 112a, and 121, UCMJ, 10 U.S.C. §§ 892, 907, 912a, 921. Her approved sentence consists of a dismissal.

The appellant complains that the military judge violated the Canons of Judicial Conduct by attending a party hosted by trial counsel and playing tennis with trial counsel during the trial. She argues that the military judge abused his discretion by refusing to disqualify himself and by denying the defense motion for a mistrial. The appellant also contends that the military judge should have *sua sponte* dismissed charges that resulted from an unreasonable multiplication of charges. We find no error and affirm.

## I. RECUSAL OF MILITARY JUDGE

### A. Factual Background

During a recess for the Fourth of July holiday, the trial counsel hosted a "Peace, Love, and Harmony Party" at his home. The party had been scheduled before the trial began and the reason for the party was purportedly: "To Promote Peace, Love and Harmony Among Trial & Defense Counsel in the Greater San Antonio Metropolitan Area. Yeah, Right!" Trial defense counsel were invited, but did not attend because of a defense policy in that Circuit that trial defense counsel should not socialize with trial counsel while a court-martial is in progress. The military judge and the assistant trial counsel did attend the party. At least one circuit defense counsel, who was not involved in the appellant's case, also attended the party.

During the party the military judge spoke with the trial counsel "off and on" for a total of about 15 minutes. The military judge commented that the trial was taking longer than anticipated. He made no other comments about the case. While at the party, the military judge, an avid tennis player, learned that two fellow party attendees were preparing for a doubles-tennis competition. The military judge agreed to play a practice round with the couple the next day. Someone, not the judge, suggested that the trial counsel play as the military judge's partner. The military judge and trial counsel played

tennis as doubles partners the next day, but did not discuss the case.

Trial resumed on Monday, 6 July 1998. On Tuesday, 7 July 1998, while members were deliberating on findings, trial defense counsel moved to disqualify the military judge and asked for a mistrial. Trial defense counsel argued that by attending the party and playing tennis with trial counsel, the military judge violated Rule for Courts–Martial (R.C.M.) 902(a), TJAG Policy Letter 3, dated 4 February 1998 (TJAGPL–3), and the American Bar Association (ABA) Code of Judicial Conduct, Canon 2. The military judge denied the motion for recusal and trial proceeded. He later denied the motion for a mistrial.

### B. Legal Background

 Our standard of review on this issue is abuse of discretion. *United States v. Robbins,* 48 M.J. 745, 753 (A.F.Ct.Crim.App. 1998), *aff'd in part and modified in part,* 52 M.J. 159 (1999). R.C.M. 902(a) states that a military judge "**shall** disqualify himself ... in any proceeding in which **that military judge's impartiality might reasonably be questioned.**" (emphasis added). *Accord Uniform Code of Judicial Conduct for Military Trial and Appellate Judges and Uniform Regulations and Procedures Relating to Judicial Discipline,* Canon 2; TJAGPL–3. This rule requires us to determine whether an objective, disinterested observer fully informed of the facts would have a significant doubt that the appellant received a fair trial. *United States v. Berman,* 28 M.J. 615, 617–18 (A.F.C.M.R.1989).

A "judge must expect to be the subject of constant public scrutiny," and must accept restrictions on his conduct that might seem burdensome to an ordinary citizen. TJAGPL–3, Canon 2A, Commentary. In addition, Canon 4, admonishes military judges to conduct "extra-judicial activities so that they do not ... cast reasonable doubt on the judge's capacity to act impartially as a judge." TJAGPL–3, Canon 4A(1). Furthermore, "[j]udges, like Caesar's wife, should always be above suspicion." *Berman,* 28 M.J. at 616. An impartial and disinterested military judiciary is the mortar that binds

military justice into a firm foundation. Avoiding the appearance of impropriety is as important to that foundation as avoiding actual impropriety. *Id.*

## C. Analysis

The issue before us raises questions not only about the specific acts complained of, but also how our judicial circuits function. As the military judge noted in his 14 page, Findings and Ruling, our circuit counsel and military judges often travel together to distant bases for trial. The offices of circuit counsel and judges are co-located and they generally share a single administrative area. Of necessity, those assigned to circuit offices become "family" to one another—frequently providing both professional and personal support when circumstances dictate. These relationships sometimes develop into long-term professional and personal friendships based on mutual respect and common interests. However, such friendships between members of the bar do not automatically disqualify a trial judge. Rather, the facts of each situation must be considered in determining whether the relationship is improper. *Id.* at 619.

### 1. *Trial Counsel's Party*

■ The military judge in this case was, at the time of trial, also the Chief Military Judge for the Central Judicial Circuit. As such, he was also the senior officer in the judicial circuit. Senior officer presence at social functions helps further the *esprit de corps* of both the Circuit and The Judge Advocate General's Department. The military judge's limited appearance at the trial counsel's party with his wife (they remained for about 2 hours) was, in our view, appropriate for this experienced senior officer. Both trial counsel and the military judge attest[1] that they did not discuss any substantive matter related to the case and the only comment made by the military judge referenced the fact that the trial was "taking longer" than expected.

Under these circumstances, we are satisfied that any disinterested observer who was **fully** aware of the facts would not believe that the military judge had lost his impartiality or have significant doubts that the appellant received a fair trial.

### 2. *The Tennis Match*

■ The tennis match presents a more difficult issue. The military judge repeatedly emphasized that tennis is not a social function, but a sport. Moreover, he noted that, unlike the sport of golf, or a day of fishing, the participants in a tennis match do not have time or the inclination to discuss anything during the match. While this may be true, we doubt that every observer of a tennis match would know or agree with the judge's explanation. However, the question which we must answer is not whether the participants could have discussed the case, nor whether they did discuss it. Rather, we must determine how a disinterested observer who sees the military judge playing tennis with the trial counsel during trial would interpret that event. The military judge concluded that such an observer would not have a reasonable doubt about the judge's impartiality here because the tennis match occurred during a three and a half day "hiatus" in the trial.

We understand that there are times when trials are delayed for lengthy periods of time in order to allow one side or the other to secure the presence of a witness, obtain a scientific analysis of evidence, or an evaluation of the accused's mental responsibility. Because of the way our judicial circuits are organized, it would be unreasonable and wholly impractical to require judges and counsel to avoid all social contact during such lengthy delays. However, three and a half days is not such a lengthy time. As already noted, a "judge must expect to be the subject of constant public scrutiny," and must conduct his "extra-judicial activities so that they do not . . . cast reasonable doubt on the judge's capacity to act impartially as a

---

1. The military judge did not testify, however, in his Essential Findings and Ruling on the defense motion he states that the "ruling incorporates factual assertions by the trial judge, and those

assertions are intended to be and are made subject to penalty of perjury." Trial counsel provided a sworn affidavit which became a part of the record as Appellate Exhibit XXVII.

judge." TJAGPL–3, Canons 2A and 4A(1). A casual observer of this tennis match might well think it cast doubt on the judge's impartiality. However, the rule requires that we consider what a disinterested person who possessed **all** of the relevant facts would believe. Therefore, there is more we must consider.

In addition to explaining his belief that tennis is a sport, not a social function, the military judge pointed out that trial defense counsel were aware long before this trial began that the military judge had frequently played tennis with this trial counsel in the past. Moreover, the defense was aware the military judge played "tennis with almost anyone he could find who met the two basic criteria of proficiency and availability." The military judge generally asked the servicing legal office to locate tennis partners for him before he arrived for a trial. His past tennis partners included non-lawyers as well as trial counsel, defense counsel, other judges, and staff judge advocates. Moreover, it was well known within the Central Judicial Circuit, the military judge did not discuss on-going cases with his tennis partners either on or off the tennis court. The appellant did not challenge any of these assertions of fact at trial, nor does she do so now.

The military judge could have prevented this issue from arising simply by declining to play tennis with the trial counsel. We would have preferred that he did so. Nevertheless, after considering all of the evidence, we conclude that a disinterested observer who knew **all** of the facts would not believe the military judge lacked impartiality or the trial was unfair.

Finally, we have exercised our authority under Articles 59(a) and 66(c) to ensure that no material prejudice to a substantial right of the appellant occurred and that the findings are correct both in law and fact. In doing so, we combed the record for any evidence that the military judge improperly favored trial counsel either before or after the motion was raised. We found no such evidence. We also considered the military judge's disclaimer of any such bias, which carries great weight. *United States v. Proctor,* 34 M.J. 549, 556 (A.F.C.M.R.1992), *aff'd,* 37 M.J. 330

(1993); *United States v. Clark,* 31 M.J. 721 (A.F.C.M.R.1990). Under these circumstances, we are satisfied the appellant was not prejudiced and the concerns of R.C.M. 902(a) were fully met. *United States v. Campos,* 42 M.J. 253, 262 (1995). We are also satisfied that the findings of guilty were correct in both law and fact.

## II. UNREASONABLE MULTIPLICATION OF CHARGES

The appellant asserts that the military judge erred by not *sua sponte* dismissing Charge II and its Specification (wrongful possession of Percocet) and Charge III and its Specification (willful dereliction of duty by obtaining Percocet without authorization). She claims that these two charges unreasonably multiplied the charges against her because they are based on or derived from the same acts that support her conviction of larceny of the same tablets. R.C.M. 307(c)(4). The appellant contends that, although she failed to raise this issue at trial, this Court may grant relief by applying the power granted us by Article 66(c), UCMJ. While we may have the power to do so, we decline the opportunity to exercise it in this case.

Failure to raise the issue at trial waives an argument based on unreasonable multiplication of charges. R.C.M. 307(c)(4). *See United States v. Denton,* 50 M.J. 189 (1998) (mem.). "[A] military judge cannot abuse his equitable power to correct an unreasonable multiplication of charges unless it is first invoked by an accused." *United States v. Erby,* 46 M.J. 649, 652 (A.F.Ct. Crim.App.1997), *aff'd in part and modified in part,* 49 M.J. 134 (1998). While we are not bound to apply waiver when we exercise our Article 66(c) powers, *United States v. Evans,* 28 M.J. 74, 76 (C.M.A.1989), we will do so unless we find an extreme or unreasonable "piling on" .of charges. *See United States v. Quiroz,* 52 M.J. 510, 513 (N.M.Ct. Crim.App.1999), *aff'd in part and modified in part on reh'g,* NMCM 98–01864 (N.M.Ct. Crim.App. Mar. 29, 2000) (unpub. op) (en banc). In any case, we must find material prejudice to a substantial right of the appellant before we take corrective action. *Unit-*

*ed States v. Powell*, 49 M.J. 460, 464 (1998); *United States v. Boyd*, 52 M.J. 758, 765 (A.F.Ct.Crim.App.2000); Article 59(a). We find no such prejudice here.

### III. CONCLUSION

The findings are correct in law and fact, and no error prejudicial to the substantial rights of the accused occurred. Accordingly, the findings and sentence are

AFFIRMED.

Senior Judge YOUNG and Senior Judge SCHLEGEL concur.