UNITED STATES, Appellee

v.

Donna L. BUTCHER, Captain
U.S. Air Force, Appellant

No. 00-0632

Crim. App. No. 33519

United States Court of Appeals for the Armed Forces

Argued April 17, 2001

Decided October 19, 2001

EFFRON, J., delivered the opinion of the Court, in which
CRAWFORD, C.J., and GIERKE, J., joined.  BAKER, J., filed an
opinion concurring in part and in the result. SULLIVAN, S.J.,
filed an opinion concurring in part, dissenting in part, and
concurring in the result.

## Counsel

For Appellant:  Captain Karen L. Hecker (argued); Colonel James R. Wise and
Lieutenant Colonel Timothy W. Murphy (on brief).


For Appellee:  Lieutenant Colonel William B. Smith (USAFR) (argued); Colonel
Anthony P. Dattilo, Major Lance B. Sigmon, and Captain Christa S. Cothrel (on
brief); Lieutenant Colonel Ronald A. Rodgers and Major Bryan T. Wheeler.

Amicus Curiae supporting appellant:  Dwight H. Sullivan (Supervising
Attorney), Eugene R. Fidell, Bianca Micaela Yuchengco Locsin (Law Student),
and Dean Kawamoto (Law Student) (on brief) - For the National Institute of
Military Justice.



Military Judge:  J. Jeremiah Mahoney


THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE PUBLICATION.

Judge EFFRON delivered the opinion of the Court.

A general court-martial composed of officer members convicted appellant, contrary to her pleas, of willful dereliction of duty, making a false official statement, wrongful possession of a controlled substance, and larceny, in violation of Articles 92, 107, 112a, and 121, Uniform Code of Military Justice, 10 USC §§ 892, 907, 912a, and 921, respectively. She was sentenced to dismissal. The convening authority approved the sentence as adjudged, and the Court of Criminal Appeals affirmed the findings and sentence in a published opinion. 53 MJ 711 (2000).

On appellant's petition, we granted review of the following issues:

> I. WHETHER THE MILITARY JUDGE'S DECISION TO NOT DISQUALIFY HIMSELF FROM APPELLANT'S COURT-MARTIAL SHOULD BE REVIEWED ON APPEAL *DE NOVO* OR AS AN ABUSE OF DISCRETION.
>
> II. WHETHER APPELLANT'S DUE PROCESS RIGHTS TO A FAIR TRIAL UNDER THE CONSTITUTION AND RECUSAL STATUTES WERE VIOLATED WHEN HER CASE WAS HEARD, OVER HER OBJECTION, BY A MILITARY JUDGE WHOSE SOCIAL CONTACT WITH TRIAL COUNSEL BEFORE AND DURING APPELLANT'S COURT-MARTIAL OCCURRED UNDER CIRCUMSTANCES THAT WOULD CAUSE A REASONABLE PERSON WITH KNOWLEDGE OF ALL THE APPLICABLE FACTS TO HAVE A REASONABLE DOUBT REGARDING THE MILITARY JUDGE'S IMPARTIALITY AND WHETHER APPELLANT RECEIVED A FAIR TRIAL.
>
> III. WHETHER THE AIR FORCE COURT ERRED BY FAILING TO DISMISS CHARGE II AND ITS SPECIFICATION (WRONGFUL POSSESSION OF PERCOCET

2

> TABLETS) AND CHARGE III AND ITS SPECIFICATION
> (WILLFUL DERELICTION OF DUTY BY OBTAINING
> PERCOCET TABLETS WITHOUT AUTHORIZATION) AS AN
> UNREASONABLE MULTIPLICATION OF CHARGES AFTER
> APPELLANT WAS CONVICTED OF CHARGE I AND ITS
> SPECIFICATION (LARCENY OF THE SAME PERCOCET
> TABLETS) WHEN NO EVIDENCE INDICATED THAT
> APPELLANT POSSESSED THE PERCOCET TABLETS AFTER
> SHE SUPPOSEDLY STOLE THEM BY OBTAINING THEM
> WITHOUT PROPER AUTHORIZATION.

For the reasons set forth below, we affirm.

## I. DISQUALIFICATION OF THE MILITARY JUDGE

### A. BACKGROUND

Appellant's trial took place on various dates between June 22 and July 8, 1998. By Thursday, July 2, the parties concluded their presentations on findings, and completed their discussion of instructions on findings with the military judge. At the close of the proceedings on July 2, the court-martial recessed through the Fourth of July weekend and resumed on Monday, July 6.

On Friday, July 3, the military judge attended a party to which all attorneys in the judicial circuit had been invited. The invitation, posted on June 17, invited the attorneys to a party "To Promote Peace, Love, and Harmony Among Trial & Defense Counsel in the Greater San Antonio Metropolitan Area. Yeah, Right!" 53 MJ at 712. The party, which was at the home of the trial counsel in this case, also served as an informal farewell for trial counsel and his wife, who planned to leave the area by

3

the end of the month. Attendance at the party was estimated to peak at 40 people, including many counsel and friends of trial counsel's wife. Several defense counsel attended. Appellant's defense counsel declined to attend in view of a circuit defense counsel policy prohibiting social activities with opposing counsel during an ongoing trial.

The military judge and his wife attended the party for about 2 hours and spoke to several judge advocates. The conversation did not extend to appellant's court-martial except for a comment by the military judge that the trial had lasted longer than anticipated. During one of these conversations, the military judge was invited to play tennis the next morning with a couple preparing for a doubles tournament. At the suggestion of another guest, the military judge agreed to have trial counsel as his doubles partner.

On Saturday, July 4, the military judge and trial counsel played a practice match against the couple that was preparing for the tournament. The match, which lasted less than 2 hours, included brief conversations about tennis and other social subjects. Appellant's court-martial was not discussed. On Monday morning, July 6, the court-martial resumed with closing arguments and instructions on findings. That afternoon, trial defense counsel learned of the judge's participation in the social and athletic events of the weekend from another defense

counsel who had attended the party.  The following day, while the members deliberated on findings, the defense moved to disqualify the military judge and also moved for a mistrial, citing the events of the weekend.

During an Article 39(a), UCMJ, 10 USC § 839(a), session, defense counsel argued that the judge's participation in social and athletic events with trial counsel in the midst of the court-martial created an "appearance of impropriety" requiring disqualification under RCM 902(a), Manual for Courts-Martial, United States (2000 ed.).[1]  Defense counsel stated that she knew the judge had played tennis with trial counsel in the past, but said that the timing of the party and tennis game made a difference in the present case.

The military judge disclosed the facts and circumstances concerning his attendance at the party and tennis match.  He stated that he was an avid tennis player who would play "with anyone" and would never discuss cases during matches.  He also observed that while he did not "believe" that his actions had been "inappropriate," he would "keep an open mind on the subject."  He advised the parties that they could submit briefs on the matter, and he would defer a final ruling.

---

[1] Defense counsel also alleged that eye contact between the judge and trial counsel during trial constituted "nonverbal" communication that violated RCM 902(a), but appellant has not pursued that basis for disqualification on appeal.

About an hour after the Article 39(a) session on the motion had ended, the members completed their deliberations, finding appellant guilty of the charged offenses. Shortly after findings were announced, the military judge stated that he had "consulted with other judges" and was certain that the socializing did not raise a reasonable doubt about his impartiality. He added that he would prepare written findings and issue a ruling after the trial had been completed. Subsequently, a post-trial session was held where defense counsel submitted a written brief, and the matter was discussed further. After this session, the Government filed a reply.

On October 30, 1998, nearly 4 months after the sentence was adjudged, the military judge denied the defense motion for a mistrial in a 14-page written ruling attached to the authenticated record. In addition to reiterating the facts concerning his actions during trial, the military judge criticized defense counsel for having a discussion with appellant about the military judge's out-of-court activities. The military judge also used the occasion to set forth his personal views on a wide range of subjects, including standards of conduct, social norms, attitudes of counsel, appellate courts, trends in military law, and military life in general. With respect to his interaction with trial counsel, the military judge concluded that a reasonable person would not infer a

6

personal relationship or other impact on his impartiality during trial as a result of the weekend's activities.

## B. DISQUALIFICATION UNDER RCM 902(a)

"An accused has a constitutional right to an impartial judge." United States v. Wright, 52 MJ 136, 140 (1999), citing Ward v. Village of Monroeville, 409 U.S. 57 (1972); Tumey v. Ohio, 273 U.S. 510 (1927). The neutrality required by constitutional due process

> helps to guarantee that life, liberty, or property will not be taken on the basis of an erroneous or distorted conception of the facts or the law. At the same time, it preserves both the appearance and reality of fairness, "generating the feeling, so important to a popular government, that justice has been done," by ensuring that no person will be deprived of his interests in the absence of a proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him."

Marshall v. Jerrico, Inc., 446 U.S. 238, 242 (1980)(citations omitted).

Article 26(d), UCMJ, 10 USC § 826(d), provides that "[n]o person is eligible to act as military judge in a court-martial if he [or she] is the accuser or a witness for the prosecution or has acted as investigating officer or a counsel in the same case." The President has supplemented Article 26 with RCM 902, "Disqualification of military judge," which is based on the

7

statute on disqualification of federal judges in civilian proceedings, 28 USC § 455. See Analysis of Rules for Courts-Martial, Manual, supra at A21-50. RCM 902(a) governs appearance of bias, and RCM 902(b) governs specific disqualifying circumstances. The present appeal concerns RCM 902(a), which invokes the following provisions in 28 USC § 455(a):

> Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

This section was enacted to maintain public confidence in the judicial system by avoiding "even the appearance of partiality." See Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 860 (1988). The appearance standard helps to enhance confidence in the fairness of the proceedings because in matters of bias, the line between appearance and reality is often barely discernible. See RICHARD E. FLAMM, JUDICIAL DISQUALIFICATION - RECUSAL AND DISQUALIFICATION OF JUDGES § 5.4.1 (1996); Liteky v. United States, 510 U.S. 540, 565 (1994)(Kennedy, J., concurring in the judgment)("In matters of ethics, appearance and reality often converge as one.").

"The decision of a military judge" on the issue of recusal "is reviewed on appeal for abuse of discretion." United States v. Norfleet, 53 MJ 262, 270 (2000). See S. CHILDRESS & M. DAVIS, FEDERAL STANDARDS OF REVIEW § 12.05 n. 8 (3rd ed. 1999)(listing

8

circuits which apply the abuse of discretion standard).  The
Seventh Circuit is the only federal circuit to apply a de novo
standard and appellant asks us to do likewise.[2]  Appellant has
not persuaded us that there is any reason based in law or policy
to depart from precedent on this point and adopt the minority
position on the standard of review.

In the course of reviewing the military judge's ruling
under RCM 902(a) for abuse of discretion, we consider the facts
and circumstances under an objective standard.  "Any conduct
that would lead a reasonable man knowing all the circumstances
to the conclusion that the judge's 'impartiality might
reasonably be questioned' is a basis for the judge's
disqualification."  United States v. Kincheloe, 14 MJ 40, 50
(CMA 1982), quoting E. Thode, REPORTER'S NOTES TO CODE OF JUDICIAL
CONDUCT 60 (1973); Wright, 52 MJ at 141.

Our Court has emphasized that the appearance standard does
not require judges to live in an environment sealed off from the
outside world.  For example, in the context of addressing
relationships between the military judge and participants in a
trial, we have noted:

> "Judges have broad experiences and a wide
> array of backgrounds that are likely to

---

[2] The Seventh Circuit reviews §455(a) issues de novo.  In re Hatcher, 150 F.3d 631, 637 (7th Cir. 1998).  The Eighth Circuit has questioned what the proper standard is in that circuit, noting that prior decisions used de novo or abuse of discretion standards.  Holloway v. United States, 960 F.2d 1348, 1351 n. 8 (8th Cir. 1992).

> develop ties with other attorneys, law
> firms, and agencies." Personal
> relationships between members of the
> judiciary and witnesses or other
> participants in the court-martial process do
> not necessarily require disqualification.

Norfleet, 53 MJ at 269-70, quoting Wright, 52 MJ at 141. See
also United States v. Hamilton, 41 MJ 32, 38-39 (CMA 1994).

The interplay of social and professional relationships in
the armed forces poses particular challenges for the military
judiciary. Both before and after service in the judiciary, a
judge advocate typically will serve in a variety of assignments
as a staff attorney and supervisor. Such assignments normally
include duties both within and outside the field of criminal
law. In the course of such assignments, the officer is likely
to develop numerous friendships as well as patterns of social
activity. These relationships are nurtured by the military's
emphasis on a shared mission and unit cohesion, as well as
traditions and customs concerning personal, social, and
professional relationships that transcend normal duty hours.
When assigned to the judiciary, the military judge frequently
will find himself or herself in close and continuing contact
with judge advocates outside the courtroom. It is not unusual
for judges and counsel to be invited to the same professional
and social functions. An additional challenge in the military
environment is the grade structure. Members of the judiciary

typically outrank counsel and may have served in a direct superior-subordinate relation to counsel in the past – or may be placed in such a relationship in the future.  In light of these circumstances, members of the military judiciary must be particularly sensitive to applicable standards of judicial conduct.

The military services have promulgated regulations that provide guidance to military judges as they seek to maintain both the reality and appearance of impartiality in the face of these circumstances.  The Air Force, for example, has established the UNIFORM CODE OF JUDICIAL CONDUCT FOR MILITARY TRIAL AND APPELLATE JUDGES to regulate judicial conduct.  Canon 4A(1) admonishes judges to conduct "extra-judicial activities so that they do not . . . cast reasonable doubt on the judge's capacity to act impartially as a judge[.]"  The CODE OF CONDUCT FOR UNITED STATES JUDGES, applicable to federal judges and specifically adopted by this Court, contains similar provisions regarding the maintenance of impartiality, dignity, and decorum in proceedings.  See, e.g., Canon 2A commentary, CODE OF CONDUCT FOR UNITED STATES JUDGES (1999)  ("A judge must expect to be the subject of constant public scrutiny . . . [and] must therefore accept restrictions that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly.")

The Air Force standards, which are patterned after the guidance applicable to civilian judges, consist of general principles rather than detailed situational restrictions. Like their civilian counterparts, these regulations do not include an absolute ban on contact between judges and counsel outside the courtroom.

A judge may be subject to administrative sanctions for conduct inconsistent with these standards. See RCM 109(a). As in civilian life, activity inconsistent with standards of judicial conduct does not mandate recusal unless it rises to the level of a violation of applicable disqualification standards. See RCM 902.

A determination that the judge should have disqualified himself or herself does not end appellate review. Neither RCM 902(a) nor applicable federal civilian standards mandate a "particular remedy" for situations in which an appellate court determines that the military judge should have removed himself or herself from a case. See, e.g., Liljeberg, supra at 862 ("There need not be a draconian remedy for every violation of § 455(a).") In Liljeberg, the Court established a three-part test for determining whether reversal of a conviction or decision is warranted as a remedy when a judge has erred in failing to recognize that disqualification was required because the judge's impartiality might reasonably be questioned:

> We conclude that . . . it is appropriate to
> consider [1] the risk of injustice to the
> parties in the particular case, [2] the risk
> that denial of relief will produce injustice
> in other cases, and [3] the risk of
> undermining the public's confidence in the
> judicial process. We must continuously bear
> in mind that to perform its high function in
> the best way justice must satisfy the
> appearance of justice.

Id. at 864 (internal quotation marks omitted).


## C. DISCUSSION

Appellant contends that the actions of the military judge violated applicable standards of judicial conduct and that the military judge should have disqualified himself under RCM 902. The Government takes the position that even if the military judge's actions violated applicable standards of conduct, the military judge did not abuse his discretion in rejecting the defense motion to recuse himself under the particular facts of this case. In the alternative, the Government argues that even if the military judge erred, the error was not prejudicial.

In its brief before our Court, the Government makes it clear that "the United States neither expects nor asks this Court to put its stamp of approval" on the military judge's actions, and we shall not do so. Instead, we shall assume, without deciding, that the military judge should have recused

13

himself and ask whether his failure to do so requires reversal under the standards set forth by the Supreme Court in Liljeberg.

The first Liljeberg factor requires consideration of "the risk of injustice to the parties." In the present case, any risk of injustice was considerably diminished because events giving rise to the disqualification motion occurred near the end of trial, after the presentation of evidence and discussion of instructions on findings. The military judge was not called upon to exercise discretion on any matter of significance concerning findings after that point. Moreover, because appellant was sentenced by a panel, the military judge's subsequent participation in the trial was limited to instructions and rulings during the sentencing proceedings. His actions in that regard were few in number and not adverse to appellant.[3] We also note that appellant received one of the sentence alternatives requested by defense counsel and that the members rejected the more severe punishment argued for by trial counsel. The suggestion in his written opinion, issued 4 months after trial, that defense counsel should not have discussed the military judge's conduct with appellant, is erroneous, but does not establish grounds for reasonably questioning the military

---

[3] The defense did not challenge any of the Government's evidence at sentencing and the two rulings made by the judge favored appellant by excluding Government evidence or modes of argument.

judge's impartiality during trial.  In light of these factors, we conclude that any concerns about the impartiality of the military judge did not pose a "risk of injustice to the parties."

The second Liljeberg factor concerns "the risk that denial of relief will produce injustice in other cases."  We note again that the Government has not asked us to endorse the military judge's conduct or his written opinion.  Based on our collective experience and our review of thousands of records of trial, we note that as a general matter, members of the military judiciary, like their civilian counterparts, are highly sensitive to the problems posed by out-of-court contacts with counsel for one party in the midst of litigation.  It is not necessary to reverse the results of the present trial in order to ensure that military judges exercise the appropriate degree of discretion in the future.

The third Liljeberg factor considers "the risk of undermining the public's confidence in the judicial process."  The present case does not involve intimate personal relationships, extensive interaction, conduct bearing on the merits of the proceedings, or other factors that could undermine the basic fairness of the judicial process.  As we noted in connection with the first factor, the conduct at issue came late in the trial, well after the military judge had completed his

essential rulings on matters that divided the parties in this litigation. Under those circumstances, we conclude that the reversal of appellant's conviction is not required to avoid undermining the public's confidence in the judicial process.

## II. UNREASONABLE MULTIPLICATION OF CHARGES

Appellant also claims that the lower court erred by failing to dismiss Charge II (wrongful possession of percocet) and Charge III (willful dereliction of duty by obtaining percocet without authorization), as an unreasonable multiplication of charges after appellant was convicted of the larceny of the percocet. Appellant raised this issue for the first time on appeal at the court below.

The Discussion accompanying RCM 307(c)(4) explains that "[w]hat is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." On appeal, the issue of unreasonable multiplication of charges involves the duty of the Courts of Criminal Appeals to "affirm only such findings of guilty, and the sentence . . . as it . . . determines, on the basis of the entire record, should be approved." Art. 66(c), UCMJ, 10 USC § 866(c). This highly discretionary power includes the power to determine that a claim of unreasonable multiplication of charges has been waived or forfeited when not raised at trial. The lower court concluded

United States v. Butcher, No. 00-0632/AF

that appellant forfeited this issue by not raising it at trial,
and appellant has not demonstrated any specific circumstances
that would lead us to conclude that the lower court abused its
considerable discretion in the present case.


                        III. CONCLUSION

     The decision of the United States Air Force Court of
Criminal Appeals is affirmed.

17

<u>United States v. Butcher</u>, No. 00-0632/AF

BAKER, Judge (concurring in part and in the result):

I agree with the majority on Issues I and III. I agree with the majority's legal framework on Issue II. And, I agree with the majority's distinction between questions of public appearance and questions of actual bias. This case does not test or question the military judge's personal integrity. This case is about public perceptions of the military justice system, as appreciated through application of RCM 902(a), which is based on 28 USC § 455(a). Applying this law, the majority opinion assumes, but does not decide, that the military judge should have recused himself.

Applying the legal test for appearance of partiality under § 455(a), I believe a reasonable person with knowledge of all the facts[1] would reasonably question the impartiality of the military judge in this case based on the interplay of 3 conjunctive factors. First, during trial the military judge attended trial counsel's party where he stayed for 2 hours; he did not just stop by. Second, and more importantly, during trial he teamed up with trial counsel in a tennis match. <u>And</u>, third, when the judge issued his written response to defense counsel's

---

[1] <u>United States v. Wright</u>, 52 MJ 136, 141 (1999).

1

recusal motion, he suggested that the accused exhibited paranoid traits for questioning the judge's impartiality,[2] that defense counsel had withheld information from his client,[3] and questioned defense counsel's motives for seeking recusal.[4]

Defense counsel was understandably unwilling to embrace the judge's description of trial counsel as a piece of sporting equipment.[5] Looking at the precipitating events and the judge's written response to those events, I conclude that a reasonable person knowing these facts would reasonably question the impartiality of the judge. In the

---

[2] "Not all accused show paranoid traits, but it is important to remember that their trial is probably the most significant event going on in their lives, so that if they see a prosecutor speak privately to a judge, or a court member converse with a bystander, their first assumption is that the conversation must concern their trial." Essential Findings and Ruling on Defense Motion for Recusal and Mistrial, 30 October 1998, at 8 n. 13.

[3] "It is also possible that she would feel betrayed by the fact that some of the information now being asserted against the judge had previously been withheld from her by her own counsel." Essential Findings at 9.

[4] "It has been disclosed that one of the defense counsel present at this party communicated the fact of my attendance and the fact of the tennis match to the accused's counsel. Apparently he felt compelled to and apparently the accused's counsel felt compelled to advise the accused, and apparently they left the determination of whether to make this motion with the accused. In a real-world environment, one might question this chain of events, but the everyday reality in today's military is that appellate defense counsel make their career second guessing trial level defense counsel, and military appellate courts order DuBay hearings based upon bizarre, meritless, and unsupported allegations." Essential Findings at 11-12.

[5] "However tennis as a sport is hardly a social activity, or even a sport involving camaraderie. It is simply a competition in which the opponent (or the partner in doubles) is an essential piece of equipment." Essential Findings at 4 n. 7.

interest of public confidence in the military justice system, we should say as much.

Nonetheless, I agree with the majority that, applying the Liljeberg factors, the decision below in this case need not be reversed. I obviously do not agree with the majority's application of the third factor (the risk of undermining the public's confidence in the judicial process). In my view, most members of the public would be surprised, if not stunned, to learn that a trial judge was socializing with and playing tennis with trial counsel during trial. Learning later that the judge considered it appropriate to play tennis with counsel, but that the situation would probably be different if the judge had dinner with counsel or went fishing with counsel would not assuage this surprise.[6] "[J]ustice must satisfy the appearance of justice." Liljeberg, 486 U.S. at 864 (internal quotation marks omitted). Questions of judicial appearance may be particularly important in the military justice system where trial judges wear government green and blue and not just judicial black.

---

[6] "Would the situation be different if the judge and his wife had gone to dinner with the prosecutor and his wife during trial? Would the situation be different if the judge and the prosecutor went on a fishing trip during the trial? Probably in both cases the answer would b[e] "yes," because of the inherent recognition that such activities are far more conducive to one-on-one personal conversations, and far

United States v. Butcher, No. 00-0632/AF

However, I agree with the majority's analysis of the first two Liljeberg factors involving the risk of injustice in this case and in other cases. Among other things, the question of recusal arose after closing argument and instructions on findings were concluded. Moreover, this was a trial before members and not before this judge alone. Finally, appellant has not pointed to any particular rulings by the military judge during sentencing, other than that pertaining to recusal, that were adverse to appellant. Nor is it clear whether the judge's views expressed in his October memorandum were also his views in July during the sentencing portion of appellant's trial. He had almost 4 months to think it over. Therefore, on balance, reversal of the decision below is not required.

---

more indicative of a close personal friendship." Essential Findings at 13-14 (footnote omitted).

4

SULLIVAN, Judge (concurring in part, dissenting in part, and concurring in the result):

I agree with the majority that abuse of discretion is the proper standard of review of a military judge's recusal decision.[1]  Although, I conclude that the military judge's extra-trial activities were imprudent, his refusal to recuse himself in this case did not constitute error.  Finally, I cannot accept the finding of "waiver" of the unreasonable-multiplication-of-charges claim nor will I join an opinion effectively granting the lower courts equity-type powers under Article 66(c), UCMJ, 10 USC § 866(c).  See United States v. Quiroz, 55 MJ 334, 345 (2001) (Sullivan, J., dissenting).

## Recusal

The majority "assume[s], without deciding, that the military judge should have recused himself and ask[s] whether his failure to do so requires reversal under the standards set forth

---

[1]  In United States v. Mitchell, 39 MJ 131, 144 n.7 (1994), we assumed, without deciding, that a de novo standard of review was applicable.

by the Supreme Court in Liljeberg." [2] ___ MJ at (14).  Would not a reasonable person consider it improper for a trial judge to associate, even socially, with court-martial personnel during trial?  Whether it be with members of the prosecution, the defense, or the military jury?[3]  See also Article 37, UCMJ, 10 USC § 837.  Is it not appropriate for a judge to refrain from being a recreational teammate of a prosecutor in tennis or golf or other team sport during a trial?  Nevertheless, full disclosure by this military judge on the record of these fleeting associations forestalled any need to recuse himself in this case. United States v. Norfleet, 53 MJ 262 (2000); United States v. Wright, 52 MJ 136 (1999).

---

[2]  Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847 (1988).

[3]  Quoting the Uniform Code of Judicial Conduct for Military Trial and Appellate Judges, which applies to the Air Force:

CANON 2

A JUDGE SHALL AVOID IMPROPRIETY AND THE APPEARANCE OF IMPROPRIETY IN ALL OF THE JUDGE'S ACTIVITIES.

A.  A judge shall respect and comply with the law* and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

* * *

B.  A judge shall not allow family, social, political or other relationships to influence the judge's judicial conduct or judgment.  A judge shall not lend the prestige of judicial office to advance the private interests of the judge or others; nor shall a judge convey or permit others to convey the impression that they are in a special position to influence the judge.  A judge shall not testify voluntarily as a character witness.

The Court of Criminal Appeals did not find that the military judge in this case abused his discretion to sit in this case. See United States v. Butcher, 53 MJ 711, 712, 714 (AF Ct. Crim. App. 2000) (concluding "that a disinterested observer" with knowledge of all "the facts would not believe the military judge lacked impartiality or the trial" lacked fairness). Moreover, our Court has refused to find an abuse of discretion solely based on general allegations of systematic bias. See, e.g., United States v. Norfleet, 53 MJ 262, 271 (2000) (no error shown where the convening authority was also military judge's boss as head of Air Force Legal Services Agency). Here, appellant did not allege any actual bias as a result of the out-of-court contacts of the judge and trial counsel. See R. 993 (defense counsel's statement that the military judge's conduct "just casts doubt on the whole trial") and Appellate Exhibit XXV at 4 (noting in appellant's

---

\* \* \*

CANON 4

A JUDGE SHALL CONDUCT THE JUDGE'S EXTRAJUDICIAL ACTIVITIES TO MINIMIZE THE RISK OF CONFLICT WITH JUDICIAL OBLIGATIONS.

A.  Extra-judicial Activities in General.  A judge shall conduct all of the judge's extra-judicial activities so that they do not:

>        (1) cast reasonable doubt on the judge's capacity to act
>            impartially as a judge;
>        (2) demean the judicial office; or
>        (3) interfere with the proper performance of judicial
>            duties.

(Emphasis added).

recusal motion, "[w]hile there does not appear to be actual impropriety . . . the fact that the party occurred at the tail end of the findings portion of this trial does not save the case from the appearance of injustice"). Under the special circumstances of this case, I would hold that the imprudence of the judge in playing tennis with one of the litigant's counsel during trial did not amount to per se impropriety that tainted the judge's role or the trial, especially given the functional environment existing today for military judges. However, I would urge that appropriate guidelines be strengthened to prohibit such associations during a trial for the sake of appearances to the general public as well as to the litigants.

In this case, the judge, to his credit, made extensive statements and written findings on the record of both the quality and nature of his informal contacts with trial counsel and any impact that these contacts had on his judicial conduct. See R. at 989-90; see generally Appellate Exhibit XXVIII. Additionally, defense counsel had the opportunity in two different Article 39(a) hearings to question the military judge about these activities. See R. at 986-95, 1038-42. In my view, the demands of RCM 902(a) were satisfied by the judge's actions in this case, and his refusal to recuse himself did not constitute error under our case precedents. See United States v. Norfleet and United States v. Wright, both supra.

4

### Findings of Guilty on Charges II & III

In addition, the lower court did not commit error by failing to dismiss the wrongful-possession and dereliction-of-duty charges after appellant was convicted of larceny.  These charges were not multiplicious.  See United States v. Teters, 37 MJ 370, 377 (CMA 1993) (applying the Blockburger [4] separate-elements test), cert. denied, 510 U.S. 1091 (1994).  Dereliction of duty and larceny clearly consist of separate elements and thereby constitute separately punishable offenses.  Compare para. 16(b)(3), Part IV, Manual for Courts-Martial, United States, 1984 (Article 92) with para. 46(b), Part IV, Manual, supra (Article 121) (e.g., duty element of Article 92 versus the wrongful-taking element of Article 121).  Wrongful possession and larceny

---

[4]  Blockburger v. United States, 284 U.S. 299, 304 (1932).

likewise consist of separate elements and are separately punishable.  Compare para. 37(b)(1), Part IV, Manual, supra (Article 112a) with para. 46(b), Part IV, Manual, supra (Article 121) (e.g., controlled-substance element of Article 112a versus the wrongful-taking element of Article 121).

The majority opinion does not engage in such legal analysis. Instead, it reaffirms the "highly discretionary power [of the lower court under Article 66(c)]. . . to determine that a claim of unreasonable multiplication of charges has been waived or forfeited. . . ."  ___ MJ at (16).  In light of the majority's continued inclination to find an equitable-type power in the lower court, I again dissent and reaffirm my position in United States v. Claxton, 32 MJ 159, 165 (1991) (Sullivan, C. J., concurring in part and in the result).  See United States v. Quiroz, 55 MJ at 345 (Sullivan, J., dissenting).

Accordingly, I join in the result reached by the majority and vote to affirm this case.