UNITED STATES

v.

**Airman Basic Paul John GADDY,
United States Air Force.**

ACM 33827.

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 26 May 1999.

Decided 28 Feb. 2001.

Appellate Counsel for Appellant: Colonel Jeanne M. Rueth and Major Jeffrey A. Vires.

Appellate Counsel for the United States: Colonel Anthony P. Dattilo, Lieutenant Colonel Ronald A. Rodgers, Major Eric D. Placke, and Major Tony R. Roberts.

Before SCHLEGEL, ROBERTS, and BRESLIN, Appellate Military Judges.

## OPINION OF THE COURT

BRESLIN, Judge:

The appellant was convicted, in accordance with his pleas, of wrongful possession, use, and distribution of marijuana, wrongful use and distribution of cocaine, and breaking restriction, in violation of Articles 112a and 134, UCMJ, 10 U.S.C. §§ 912a, 934. The sentence adjudged and approved included a bad-conduct discharge, confinement for 14 months, and total forfeitures. The appellant maintains the military judge erred in considering as evidence in sentencing a letter of reprimand based upon the results of a command-directed urinalysis, and that he was prejudiced by improper post-trial processing. We find error and reassess the sentence.

### Letter of Reprimand for Command-Directed Urinalysis

Shortly after his arrival at his first assignment, the appellant came under investigation for drug abuse. On 20 December 1998, agents of the Air Force Office of Special Investigations (AFOSI) confronted the appellant about his drug use, and he confessed. On 31 December 1998, the appellant's squadron section commander ordered him to submit to a command-directed urinalysis. On 12 January 1999, the appellant was apprehended by local law enforcement for a traffic infraction and possessing alcoholic beverages underage. The next day, the appellant's squadron commander restricted him to the limits of the installation, and ordered another command-directed urinalysis. On 18 January 1999, the appellant broke restriction and left the base without authority.

The first command-directed urinalysis tested positive for marijuana, resulting in a letter of reprimand dated 21 January 1999. The second urinalysis test was positive for cocaine, and resulted in a second letter of reprimand dated 28 January 1999.

Shortly before trial, the government notified the defense counsel of their intention to introduce the letters of reprimand as aggravation evidence during the sentencing portion of the trial. Defense counsel moved to keep out this evidence, claiming it was seized unlawfully under Mil.R.Evid. 311 and did not fulfill the purpose of R.C.M. 1001. The military judge declined to admit the first letter of reprimand since the positive result could have resulted from the appellant's charged use of marijuana. The military judge admitted the second letter of reprimand after finding that it was properly included in the appellant's personnel file.

After the military judge's ruling, trial defense counsel presented Air Force Instruction (AFI) 44–120, *Drug Abuse Testing Program*, paragraph 2.5.6.7 (1 April 1997), which had cautionary language indicating limitations on the use of command-directed urinalysis test results. The government countered that the command-directed urinalysis result was not being used as the basis of the court-martial action, but rather was being offered as part of a letter of reprimand properly included in the appellant's personnel records. The military judge reconsidered the motion but determined the letter of reprimand was admissible, not to increase the punishment but only to show the appellant's rehabilitation potential.

The military judge, sitting alone, sentenced the appellant. Trial defense counsel, acting upon the appellant's instructions, argued for a bad-conduct discharge in lieu of lengthy confinement. The appellant had a pretrial agreement with the convening authority which limited to 18 months the maximum period of confinement the convening authori-

ty would approve. The military judge sentenced the appellant to a bad-conduct discharge, confinement for 14 months, and total forfeitures.

Congress delegated to the President the authority to prescribe rules for pretrial, trial, and post-trial procedures for courts-martial. Article 36(a), UCMJ, 10 U.S.C. § 836(a). Pursuant to this delegated authority, the President promulgated the Rules for Courts Martial (R.C.M.), including R.C.M. 1001 governing presentencing procedure. R.C.M. 1001(b)(2) provided, in pertinent part:

> (2) *Personal data and character of prior service.* Under regulations of the Secretary concerned, trial counsel may obtain and introduce from the personnel record of the accused evidence of the accused's ... character of prior service. Such evidence includes copies of reports reflecting the past military efficiency, conduct, performance, and history of the accused and evidence of any disciplinary actions including punishments under Article 15.

> "Personnel records of the accused" includes any records made or maintained in accordance with departmental regulations that reflect the past military efficiency, conduct, performance and history of the accused.

Thus, in order to be admissible in sentencing, the documents must comply with the requirements of the regulations established by the respective Secretaries controlling what becomes part of service members' personnel records.

Service secretaries have implemented special regulations regarding testing military personnel for drugs. The Secretary of the Air Force issued AFI 44–120, *Drug Abuse Testing Program,* 1 April 1997, setting out the purposes and procedures for urinalysis testing in the Air Force. The instruction provided that a commander may order "commander-directed" drug testing. It also provided this caution: "Commander-directed testing should be used as a last resort because the results cannot be used in actions under the Uniform Code of Military Justice, or to characterize a member's service either as general or under other than honorable conditions if the member is administratively separated." AFI 44–120, *Drug Abuse Testing Program,* 1 April 1997, paragraph 2.5.6.7. Of course the language, "cannot be used in actions under the Uniform Code of Military Justice" was not very specific-it did not indicate clearly whether the limitation was only on using the result as a basis for criminal charges, or whether it also prevented consideration in sentencing of a letter of reprimand based on the result.

AFI 44–120 was based upon Department of Defense Directive (DoDD) 1010.1, 9 December 1994. The applicable portion of that directive provides:

> 3.1. It is DoD policy to:
>
> . . .
>
> 3.1.3. Use drug testing as a basis to take action, adverse or otherwise (including referral for treatment), against a Service member based on a positive test result.
>
> . . .
>
> 3.4. *Use of Urinalysis Results*
>
> 3.4.1. Urinalysis results may be used as evidence in disciplinary actions under the UCMJ (reference (g)) and in all adverse administrative actions (including separation from the Military Service), except in the following circumstances when:
>
> . . .
>
> 3.4.1.3. A Service member is tested for possible drug use as part of a command-directed urinalysis, as in paragraph 3.3.6., above. Results of a command-directed urinalysis test may be used as a basis for administrative action, including separation, but shall not be used as the basis for an action under the UCMJ ... or be considered in the issue of characterization of service in a separation proceeding.
>
> . . .
>
> 3.4.2. The limitations in subparagraphs 3.4.1.1. through 3.4.1.4., above, shall not apply when urinalysis results are used as evidence for impeachment or rebuttal purposes in any administrative or disciplinary proceeding in which the Service member first introduces the evidence of drug abuse (or lack, thereof).

From the language of the DoD directive, it appears that evidence of positive results from

a command-directed urinalysis test may not be used in any disciplinary action under the UCMJ. The only exceptions are that a positive result from a command-directed urinalysis may be used as a basis for administrative separation action, or for impeachment or rebuttal purposes in limited circumstances. On its face, the DoD directive precludes use of positive results from a command-directed urinalysis test as evidence in a court-martial, including the sentencing portion of the trial. Since AFI 44–120 was based on this DoD directive, we conclude that this was also the intent of the Air Force instruction.

Unfortunately, little of this was brought to the attention of the military judge. It is unclear whether the government gave the defense timely notice of its intent to use this evidence in sentencing, and certainly the defense did not provide the military judge with proper notice of their motion. Neither party alerted the military judge to the controlling directive or to this Court's prior unpublished decisions on this matter. *See United States v. Hayes*, ACM S28247 (A.F.Ct.Crim.App. 6 Nov 90) (unpub.op.); *United States v. Cherim*, ACM S27535 (A.F.Ct.Crim.App. 27 Aug 87) (unpub.op.); *United States v. Byrd*, ACM 25688 (A.F.Ct.Crim.App. 11 Mar 87) (unpub.op.). However, in light of the Secretarial limitations on the use of command-directed urinalysis results, we must find that the military judge erred in admitting into evidence for sentencing the letter of reprimand based on the positive result of the command-directed urinalysis test.

Having found error, we must test for prejudice. Under Article 59(a), UCMJ, 10 U.S.C. § 859(a), the "finding or sentence of court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused." Article 59(a) constrains this Court's authority to reverse. *United States v. Powell*, 49 M.J. 460, 464 (1998).

■ The evidence improperly admitted showed that the appellant wrongfully used cocaine on one occasion outside the charged time frame, after he had been apprehended by the AFOSI. To determine whether this had a prejudicial impact, we consider the other evidence properly considered by the military judge in sentencing. The appellant admitted, through his pleas and a stipulation of fact, to using and distributing cocaine on multiple occasions, to using and distributing marijuana on multiple occasions, and to possessing marijuana on one occasion. There was also evidence that the appellant, after being apprehended by the AFOSI, received a letter of reprimand for consuming alcohol underage, was found guilty in local court for misdemeanor offenses (running a red light and being a minor in possession of alcoholic beverages) arising out of the same incident, and disobeyed an order restricting him to the base.

In admitting the challenged letter of reprimand, the military judge indicated she would not consider it for the purpose of increasing the sentence, but only as it reflected upon the appellant's rehabilitation potential. Considering the extent of the appellant's drug abuse and his difficulties with the law after the charged offenses, the military judge had ample evidence-other than the command-directed urinalysis-to consider in evaluating the appellant's rehabilitative potential. We also note that the appellant asked his counsel to argue for a bad-conduct discharge in lieu of lengthy confinement. Considering all the circumstances of this case, we find that the military judge's consideration of the challenged letter of reprimand was harmless error.

### Post-trial Processing

After trial, the staff judge advocate for Headquarters, Twentieth Air Force, prepared the staff judge advocate's recommendation (SJAR) and had it served upon the appellant and trial defense counsel. The appellant submitted a single letter from his pastor attesting to his good qualities as a young man. The convening authority approved the adjudged sentence on 26 August 1999. There is no addendum to the SJAR in the record, and the SJAR does not advise the convening authority that he must consider matters submitted by the appellant. It is not apparent from the record that the convening authority ever considered the appellant's clemency submission. We have not received any post-trial affidavits clarifying this mat-

ter. *United States v. Crawford,* 34 M.J. 758, 761 (A.F.C.M.R.1992).

Article 60(c)(2), UCMJ, 10 U.S.C. § 860(c)(2), requires the convening authority to consider matters submitted by an accused before taking action on a sentence. Appellate courts will not speculate as to whether a convening authority considered these materials. *United States v. Craig,* 28 M.J. 321, 325 (C.M.A.1989). This Court presumes a convening authority has done so if the SJA prepared an addendum to the SJAR that (1) tells the convening authority of the matters submitted, (2) advises the convening authority that he or she must consider the matters, and (3) the addendum listed the attachments, indicating they were actually provided. *United States v. Foy,* 30 M.J. 664 (A.F.C.M.R.1990). If no addendum to the SJAR is prepared, then the record must reflect that the convening authority was properly advised of the obligation to consider the matters submitted, and there must be some evidence (such as the convening authority's initials) showing the matters were actually reviewed. *United States v. Godreau,* 31 M.J. 809, 811–12 (A.F.C.M.R.1990).

This record of trial does not demonstrate compliance with the requirements of Article 60(c), UCMJ, and we have no post-trial affidavits. Therefore, we find error. The record does not indicate who was responsible for the deficiencies in post-trial processing.

The Court of Appeals for the Armed Forces requires, in cases such as this, that this Court must either provide meaningful relief, return the case to the Judge Advocate General for remand to a convening authority for a new post-trial recommendation and action, or articulate why there was no prejudice to the appellant. *United States v. Wheelus,* 49 M.J. 283, 289 (1998). The appellant asks the Court to return the case to the convening authority for a new action noting that the convening authority is an accused's best chance for post-trial clemency. *Id.* at 287; *United States v. Wilson,* 26 C.M.R. 3, 6, 1958 WL 3280 (C.M.A.1958). At the same time, appellate courts recognize that returning the case to the convening authority may not be effective, given the passage of time and the possible replacement of people involved in the case. An alternative remedy is for this Court to provide meaningful relief, not as an exercise of executive clemency, but action under Article 66(c), UCMJ, 10 U.S.C. § 866, to moot any claim of prejudice. *Wheelus,* 49 M.J. at 288. Finally, the government suggests that this error does not prejudice the appellant, since the single letter is of little weight, considering his crimes, the pretrial agreement, and the favorable sentence imposed by the military judge.

We are convinced that we can best remedy this error by exercising our authority under Article 66(c) rather than returning the case to the convening authority so long after trial. We note the appellant, despite his short time in the Air Force, amassed a substantial record of misconduct. At trial, he asked for a bad-conduct discharge instead of lengthy confinement. He had a pretrial agreement with the convening authority not to approve confinement in excess of 18 months. The military judge sentenced him to a bad-conduct discharge, confinement for 14 months and total forfeitures. That sentence to confinement has been served.

We find that an appropriate sentence for this accused, under all the circumstances of the case, is a bad-conduct discharge, confinement for 12 months, and total forfeitures. The findings and modified sentence are correct in law and fact, and on the basis of the entire record are

AFFIRMED.