# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Senior Airman CHRISTOPHER L. OLIVER
### United States Air Force

## ACM 38481 (f rev)

## 24 February 2016

Sentence adjudged 26 June 2013 by GCM convened at Joint Base San Antonio-Lackland, Texas. Military Judge: Donald R. Eller (sitting alone).

Approved Sentence: Dishonorable discharge, confinement for 24 months, and reduction to E-1.

Appellate Counsel for Appellant: Major Christopher D. James.

Appellate Counsel for the United States: Major Meredith L. Steer; Major Daniel J. Breen; and Gerald R. Bruce, Esquire.

Before

TELLER, SANTORO, and ZIMMERMAN
Appellate Military Judges

OPINION OF THE COURT
UPON FURTHER REVIEW

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

SANTORO, Judge:

A military judge sitting as a general court-martial convicted Appellant, pursuant to his pleas, of two specifications of violating a general regulation, one specification of dereliction of duty, and three specifications of adultery, in violation of Articles 92 and 134, UCMJ, 10 U.S.C. §§ 892, 934. Contrary to his pleas, Appellant was convicted of five additional specifications of violating a general regulation, one specification of wrongful sexual contact, and one specification of consensual sodomy, in violation of

Articles 92, 120, and 125, UCMJ, 10 U.S.C. §§ 892, 920, 925.[1]  The adjudged and approved sentence consisted of a dishonorable discharge, confinement for 24 months, and reduction to E-1.

Appellant initially submitted nine assertions of error.  We granted relief on his post-trial processing claim and returned the record of trial for new convening authority action but did not address his remaining arguments.  *United States v. Oliver*, ACM 38481 (A.F. Ct. Crim. App. 15 April 2015).  We now address the remaining assignments of error, including two additional errors premised on the additional post-trial processing: (1) the military judge abused his discretion in admitting a prosecution sentencing exhibit, (2) several specifications are multiplicious or are an unreasonable multiplication of charges, (3) several specifications are legally insufficient, (4) his guilty plea to two specifications was improvident, (5) the evidence relating to one of the specifications alleging a violation of a general regulation is legally and factually insufficient, (6) unlawful command influence undermined his substantial rights, (7) his sentence is inappropriately severe, (8) his trial defense counsel were ineffective, (9) he is entitled to additional post-trial processing because there is no indication that the convening authority reviewed his submissions before taking action, and (10) he is entitled to relief for dilatory post-trial processing.[2]  We disagree and affirm.

*Background*

Appellant was a military training instructor (MTI) at Joint Base San Antonio-Lackland, Texas.  The charges and specifications arose from his efforts to develop, conduct, and maintain personal and intimate relationships with four female trainees and his use of abusive training methods against a member of a flight under his supervision.  Appellant identified certain female trainees and "tested" them by trying to get them to show him their tattoos, spending time alone with them, and treating them more favorably than their flight mates.  Some of the trainees admitted flirting with him; some said the relationships were consensual, while others said they engaged in sexual conduct voluntarily but were pressured given the nature of the relationship and Appellant's power and authority over them.

Additional facts necessary to resolve the assignments of error are included below.

*Admission of Prosecution Sentencing Exhibit*

In his written unsworn statement, Appellant wrote, "I am a good person, a good person that made some terrible mistakes.  Although I made bad decisions, those decisions do not define me as a person and I hope I can highlight to you the type of person I really

---

[1] Appellant was found not guilty of two specifications alleging abusive sexual contact, one alleging forcible sodomy, and one alleging obstruction of justice.

[2] Issues 5 through 8 are raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

am." Trial counsel then sought to introduce Appellant's response to punishment he had received under Article 15, UCMJ, 10 U.S.C. § 815, for improper conduct toward trainees (including one of the victims named in the specifications) and attempting to impede an investigation into that conduct.[3] Trial counsel argued that Appellant's statement in his Article 15, UCMJ, response, "I know the rules and would not break them," coupled with his denials that he engaged in improper relationships with trainees, rebutted his statement that he was a "good person" and that the conduct for which he was being sentenced was inconsistent with his conduct generally.

The military judge admitted the document, stating:

> [U]nder R.C.M. 1001(c)(2)(C), "The government may rebut statements of fact contained in an unsworn. . . ." The court's evaluation of the accused's unsworn is that they are statements of fact. They are not opinion; "I'm a good person; a good person that made some terrible mistakes."
>
> In the context of paragraph 12, "I am not a bad person. I am someone who made a terrible, terrible mistake," these are in reference to his offenses. They are, nonetheless, blanket statements of fact. To the extent that Prosecution Exhibit 22 reflects that on a prior occasion the accused may have presented a false statement to his commander, it does reflect on the accused's service and in the full-person concept of being a good or a bad person.
>
> I can keep it in its appropriate context. I will give it the weight that I think it's due; however, it is a statement of fact properly rebutted under R.C.M. 1001(c)(2)(C).

We review a military judge's decision to admit sentencing evidence for an abuse of discretion. *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000). Such a review implicitly acknowledges that a military judge has a range of choices, and we will not overturn an action taken within that range. *United States v. Lubich*, 72 M.J. 170, 173 (C.A.A.F. 2013). If evidence is erroneously admitted, we grant relief only when it substantially influenced the adjudged sentence. *United States v. Griggs*, 61 M.J. 402, 410 (C.A.A.F. 2005).

As correctly noted by the military judge, Rule for Court-Martial (R.C.M.) 1001(c)(2)(C) authorizes the government to rebut statements of fact in an unsworn

---

[3] A document reflecting the Article 15, UCMJ, 10 U.S.C. § 815, proceedings—without Appellant's written response—had previously been admitted, without objection, during the prosecution's sentencing case-in-chief.

statement. We agree that the statement, "I am a good person," is a statement of fact. *Cf. United States v. Cleveland*, 29 M.J. 361 (C.M.A. 1990) (holding that the statement, "*I feel that I have served well*" is an opinion and not subject to rebuttal (emphasis added)).

We cannot conclude that the military judge abused his discretion in admitting this document. The test is not whether we would have ruled similarly, but rather whether the trial judge's decision was within the broad range of choices available to him. *Lubich*, 72 M.J. at 173. It was. We are confident the military judge placed the document in its proper rebuttal context as he said he would. *United States v. Robbins*, 52 M.J. 455, 457 (C.A.A.F. 2000) ("A military judge is presumed to know the law and apply it correctly . . . .").

*Multiplicity and Unreasonable Multiplication of Charges*

Specifications 1 and 2 of Charge I alleged that Appellant wrongfully attempted to develop, and did conduct, a personal, intimate, and sexual relationship with Airman First Class (A1C) CD. The two specifications differed only in the date ranges alleged: the first specification (and date range) corresponded with when the victim was in basic military training status whereas the second corresponded with when the victim was in technical training status. Specifications 3 and 4 of Charge I alleged similar misconduct with A1C MK and also differed only in their date ranges for the same reason. Appellant asserts that this charging scheme resulted in specifications that were "facially duplicative" and improperly exposed him to unreasonably enhanced criminal exposure, and are, therefore, either multiplicious or an unreasonable multiplication of charges.

As Appellant failed to raise this claim at trial, we test for plain error. *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009). In the context of claims of unreasonable multiplication of charges, we will not find error unless there was an "extreme or unreasonable 'piling on' of charges." *See United States v. Butcher*, 53 M.J. 711, 714 (A.F. Ct. Crim. App. 2000), *aff'd*, 56 M.J. 87, 93 (C.A.A.F. 2001).

There are three related concepts surrounding multiplicity and unreasonable multiplication of charges: multiplicity for purposes of double jeopardy, unreasonable multiplication of charges as applied to findings, and unreasonable multiplication of charges as applied to sentence.

Multiplicity in violation of the double jeopardy clause of the Constitution[4] occurs when "a court, contrary to the intent of Congress, imposes multiple convictions and punishments under different statutes for the same act or course of conduct." *United States v. Roderick*, 62 M.J. 425, 431 (C.A.A.F. 2006) (emphasis omitted) (quoting *United States v. Teters*, 37 M.J. 370, 373 (C.M.A. 1993)). Thus, "an accused may not be

---

[4] U.S. CONST. amend. V.

convicted and punished for two offenses where one is necessarily included in the other, absent Congressional intent to permit separate punishments." *United States v. Morita*, 73 M.J. 548, 564 (A.F. Ct. Crim. App. 2014), *rev'd on other grounds*, 74 M.J. 116 (C.A.A.F. 2015).

The Supreme Court established a "separate elements test" for analyzing multiplicity issues: "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). "Accordingly, multiple convictions and punishments are permitted . . . if the two charges each have at least one separate statutory element from each other." *Morita*, 73 M.J. at 564. Where one offense is necessarily included in the other under the separate elements test, legislative intent to permit separate punishments may be expressed in the statute or its legislative history, or "it can also be presumed or inferred based on the elements of the violated statutes and their relationship to each other." *Teters*, 37 M.J. at 376–77.

Even if offenses are not multiplicious, courts may apply the doctrine of unreasonable multiplication of charges to dismiss charges and specifications. Rule for Courts-Martial 307(c)(4) summarizes this principle as follows: "What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." The government may not needlessly "pile on" charges against an accused. *See United States v. Foster*, 40 M.J. 140, 144 n.4 (C.M.A. 1994). Our superior court has endorsed the following non-exhaustive list of factors to consider in determining whether unreasonable multiplication of charges has occurred:

> (1) Did [Appellant] object at trial that there was an unreasonable multiplication of charges and/or specifications?;
> (2) Is each charge and specification aimed at distinctly separate criminal acts?;
> (3) Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality?;
> (4) Does the number of charges and specifications [unreasonably] increase the appellant's punitive exposure?; and
> (5) Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?

*United States v. Quiroz*, 55 M.J. 334, 338–39 (C.A.A.F. 2001) (quoting *United States v. Quiroz*, 53 M.J. 600, 607 (N.M. Ct. Crim. App. 2000)) (line breaks added) (quotation

marks omitted).  "Unlike multiplicity—where an offense found multiplicious for findings is necessarily multiplicious for sentencing—the concept of unreasonable multiplication of charges may apply differently to findings than to sentencing."  *United States v. Campbell*, 71 M.J. 19, 23 (C.A.A.F. 2012).  When the *Quiroz* factors indicate that the unreasonable multiplication of charges principles affect sentencing more than findings, "the nature of the harm requires a remedy that focuses more appropriately on punishment than on findings."  *Quiroz*, 55 M.J. at 339.

The specifications are not facially duplicative as each covers a different time period.  Moreover, we conclude that it was not unreasonable to draw a distinction between the training status of the victims at the time of the offenses.  When the victims were in basic training, Appellant was A1C CD's flight chief and oversaw her military training instructor.  He was A1C MK's military training instructor. His military relationship with both trainees changed when they moved from basic training to technical school, but he remained bound by the regulation not to develop personal relationships with them while they were in either status.  It was not unreasonable for the Government to conclude, and to charge accordingly, that the nature of the offenses was qualitatively different based on Appellant's military relationship with his victims at the time of the offenses.  The specifications were neither multiplicious nor an unreasonable multiplication of charges.

*Legal and Factual Sufficiency (Wrongful Sexual Contact)*

In Specification 2 of Charge II, Appellant was charged with engaging in sexual contact with A1C LMS on divers occasions without her consent.  Specifically, it was alleged that he groped her groin by placing her in fear of an impact on her military career through an abuse of his military rank, position, and authority.  The military judge acquitted him of the charged offense but found him guilty of the lesser included offense of wrongful sexual contact, also in violation of Article 120, UCMJ.

Appellant now asserts that the evidence is legally and factually insufficient to support his conviction because, he argues, the victim's account was implausible and she could not remember the exact date on which the incident occurred.

We review issues of legal and factual sufficiency de novo.  *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).  The test for legal sufficiency is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt."  *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (quoting *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987)).  In applying this test, "we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution."  *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001); *see also United States v. McGinty*, 38 M.J. 131, 132 (C.M.A. 1993).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of [Appellant]'s guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325. In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399. The term reasonable doubt, however, does not mean that the evidence must be free from conflict. *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993).

The elements of the offense of wrongful sexual contact, as a lesser included offense of the charged offense of abusive sexual contact, are:

(1) That Appellant engaged in sexual contact with A1C LS;
(2) That such sexual contact was done without her consent; and
(3) That the sexual contact was wrongful.

The victim testified that Appellant touched her groin without her consent on multiple occasions and described when they occurred. Her testimony, both independently and when viewed in conjunction with the other evidence in the record, was sufficient to enable a reasonable factfinder to conclude beyond a reasonable doubt that Appellant committed the offense.

We have considered the evidence in the light most favorable to the prosecution. Having paid particular attention to the matters raised by Appellant, we find the evidence legally sufficient to support his conviction for wrongful sexual contact. Moreover, having made allowances for not having personally observed the witnesses, we are, ourselves, convinced of his guilt beyond a reasonable doubt.

*Violation of a General Regulation*

Charge I contained seven specifications alleging violations of Air Education and Training Command Instruction (AETCI) 36-2909, *Professional and Unprofessional Relationships* (2 March 2007) (certified current 26 September 2011). Appellant pled guilty to two of the seven (Specifications 5 and 6) and was convicted, contrary to his pleas, of the others.

He now challenges the legal sufficiency of his convictions and the military judge's decision to accept his guilty pleas, arguing that violations of AETCI 36-2909 are not

punishable under Article 92, UCMJ, because the regulation fails to include the necessary notice of its punitive nature.

The test for legal sufficiency is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *Humpherys*, 57 M.J. at 94 (quoting *Turner*, 25 M.J. at 324). In applying this test, "we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *Barner*, 56 M.J. at 134; *see also McGinty*, 38 M.J. at 132.

We review a military judge's decision to accept a guilty plea for an abuse of discretion and review questions of law arising from the guilty plea de novo. *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008). "In doing so, we apply the substantial basis test, looking at whether there is something in the record of trial, with regard to the factual basis or the law, that would raise a substantial question regarding the appellant's guilty plea." *Id.*; *see also United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991) (stating that a plea of guilty should not be overturned as improvident unless the record reveals a substantial basis in law or fact to question the plea). It is Appellant's burden to demonstrate a substantial basis for questioning the plea. *United States v. Negron*, 60 M.J. 136, 141 (C.A.A.F. 2004).

We have previously considered and rejected Appellant's argument. *United States v. LeBlanc*, 74 M.J. 650 (A.F. Ct. Crim. App. 2015) (en banc).[5]

> [A]lthough AETCI 36-2909 did not meet all requirements of [Air Force Instruction] 33-360, the cited provisions were not intended to protect personal liberties or interests, and the appellant lacks standing to enforce them. Any challenge to the providence of his pleas or the legal sufficiency of his conviction on that basis does not constitute an error materially prejudicial to the substantial rights of the appellant.

*Id.* at 658. We discern no material difference between this case and *LeBlanc*, and therefore conclude that Appellant is entitled to no relief on this issue.

*Unlawful Command Influence*

Appellant next alleges, for the first time on appeal, that apparent unlawful command influence so permeated the Air Force at the time of his trial that it was impossible for him to receive a fair trial or clemency consideration.

---

[5] Appellate briefs in the instant case were filed before we issued our decision in *United States v. LeBlanc*, 74 M.J. 650 (A.F. Ct. Crim. App. 2015) (en banc).

Article 37(a), UCMJ, 10 U.S.C. § 837(a), states: "No person subject to this chapter may attempt to coerce or . . . influence the action of a court-martial or any other military tribunal or any member thereof, in reaching the findings or sentence in any case." The mere appearance of unlawful command influence may be "as devastating to the military justice system as the actual manipulation of any given trial." *United States v. Ayers*, 54 M.J. 85, 94–95 (C.A.A.F. 2000) (quoting *United States v. Allen*, 33 M.J. 209, 212 (C.M.A. 1991)).

On appeal, Appellant bears the initial burden of raising unlawful command influence. *United States v. Salyer*, 72 M.J. 415, 423 (C.A.A.F. 2013). He must show: "(1) facts, which if true, constitute unlawful command influence; (2) that the proceedings were unfair; and (3) that the unlawful command influence was the cause of the unfairness." *Id*. The initial burden of showing potential unlawful command influence is low but is more than mere allegation or speculation. *United States v. Stoneman*, 57 M.J. 35, 41 (C.A.A.F. 2002). "The quantum of evidence required to raise unlawful command influence is 'some evidence.'" *Id*. (quoting *United States v. Stoneman*, 57 M.J. 35, 47 (C.A.A.F. 2002). Once an issue of unlawful command influence is raised by some evidence, the burden shifts to the government to rebut the allegation by persuading the [c]ourt beyond a reasonable doubt that (1) the predicate facts do not exist; (2) the facts do not constitute unlawful command influence; or (3) the unlawful command influence did not affect the findings or sentence. *Id*. (citing *United States v. Biagase*, 50 M.J. 143, 150 (C.A.A.F. 1999).

Appellant's argument focuses in large part on various comments by officials including the President of the United States, the Secretary of Defense, and other Air Force senior leaders. Notably, none of the comments at issue were made by anyone directly involved in Appellant's court-martial.

We have reviewed the entire record, including the comments made by the senior officials. We need not reach the question of whether Appellant met his initial burden of production of evidence, as we find beyond a reasonable doubt that the statements at issue had no impact on Appellant's trial. Furthermore, an objective, disinterested, reasonable member of the public, fully informed of all the facts and circumstances, would not harbor a significant doubt about the fairness of Appellant's court-martial. *See United States v. Lewis*, 63 M.J. 405, 415 (C.A.A.F. 2006). We find beyond a reasonable doubt that the case was not infected by actual or apparent unlawful command influence.

*Sentence Severity*

Appellant argues that his sentence is inappropriately severe and asks that we mitigate his sentence to confinement by one year. In support of his argument, he refers to sentences received by other military training instructors for what he asserts was similar misconduct.

We review sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). We "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we find] correct in law and fact and determine[], on the basis of the entire record, should be approved." Article 66(c), UCMJ, 10 U.S.C. § 866(c). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009). We review Appellant's sentence based upon an individualized consideration of Appellant, the nature and seriousness of the offenses, and the character of the offender. *United States v. Snelling*, 14 M.J. 267, 268 (quoting *United States v. Mamaluy*, 27 C.M.R. 176, 180–81 (C.M.A. 1959)).

While we have a great deal of discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010); *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999); *United States v. Healy*, 26 M.J. 394, 395–96 (C.M.A. 1988). The maximum imposable sentence was a dishonorable discharge, confinement for 23 years and 6 months, forfeiture of all pay and allowances, and reduction to E-1. The approved sentence of a dishonorable discharge, 24 months of confinement, and reduction to E-1 was clearly within the discretion of the convening authority.

The appropriateness of a sentence generally should be determined without reference or comparison to sentences in other cases. *United States v. Ballard*, 20 M.J. 282, 283 (C.M.A. 1985). We are not required to engage in comparison of specific cases "except in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases." *Lacy*, 50 M.J. at 288 (quoting *Ballard*, 20 M.J. at 283). "[A]ppellant bears the burden of demonstrating that any cited cases are 'closely related' to his or her case and that the sentences are 'highly disparate.'" *Id*. If that burden is satisfied, the government must then establish a rational basis for the disparity. *Id*. Closely related cases include those which pertain to "coactors involved in a common crime, servicemembers involved in a common or parallel scheme, or some other direct nexus between the servicemembers whose sentences are sought to be compared." *Lacy*, 50 M.J. at 288.

We have reviewed the materials submitted by Appellant and conclude that he has not met his burden to establish that the cases he cited were "closely related." The cases all occurred at other Air Force bases, or in other military services, or with demonstrably different facts, charges, and findings.

Appellant violated his position of trust and used that position to develop and attempt to develop inappropriate relationships with four trainees, humiliated another, engaged in wrongful sexual contact and sodomy with a trainee, and committed adultery with three trainees. While there were positive aspects to his military career, his offenses

were serious and had a devastating impact upon good order and discipline. Accordingly, we conclude that the approved sentence is not inappropriately severe.

*Effectiveness of Counsel*

Appellant next contends that his trial defense counsel provided him ineffective assistance in three ways: (1) by failing to file a motion to change venue or voir dire the military judge on his past involvement in MTI cases; (2) by failing to obtain photographs of the location where the acts of abusive sexual contact occurred; (3) and by failing to cross-examine the witnesses effectively.

We review claims of ineffective assistance of counsel de novo, *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009), following the two-part test outlined by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687, (1984). *See United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F. 2007). Our superior court has applied this standard to military courts-martial, noting that "in order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361 (C.A.A.F. 2010) (citing *Strickland*, 466 U.S. at 687; *Mazza*, 67 M.J. at 474).

The deficiency prong requires Appellant to show his counsel's performance fell below an objective standard of reasonableness, according to the prevailing standards of the profession. *Strickland*, 466 U.S. at 688. The prejudice prong requires Appellant to show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In doing so, Appellant "must surmount a very high hurdle." *United States v. Moulton*, 47 M.J. 227, 229 (C.A.A.F. 1997) (citing *Strickland*, 466 U.S. at 689). This is because counsel is presumed competent in the performance of his or her representational duties. *United States v. Anderson*, 55 M.J. 198, 201 (C.A.A.F. 2001). Thus, judicial scrutiny of a defense counsel's performance must be "highly deferential and should not be colored by the distorting effects of hindsight." *United States v. Alves*, 53 M.J. 286, 289 (C.A.A.F. 2000) (citing *Moulton*, 47 M.J. at 229).

To determine whether the presumption of competence has been overcome, our superior court has set forth a three-part test:

> 1. Are appellant's allegations true; if so, "is there a reasonable explanation for counsel's actions"?
>
> 2. If the allegations are true, did defense counsel's level of advocacy "fall measurably below the performance . . . [ordinarily expected] of fallible lawyers"?

3. If defense counsel was ineffective, is there "a reasonable probability that, absent the errors," there would have been a different result?

*United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (alteration and omission in original) (quoting *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)).

"[T]he defense bears the burden of establishing the truth of the factual allegations that would provide the basis for finding deficient performance." *Tippit*, 65 M.J. at 76 (citing *Polk*, 32 M.J. at 153). When there is a factual dispute, appellate courts determine whether further factfinding is required. *United States v. Ginn*, 47 M.J. 236, 242–43 (C.A.A.F. 1997). We ordered trial defense counsel to provide affidavits addressing the allegations outlined above. Based upon our review of Appellant's claims, trial defense counsel's affidavits, and the matters contained in the record, we can resolve this issue without ordering additional factfinding.

Trial defense counsel averred that they did not voir dire the military judge for two principal reasons: first, they were already aware of the other MTI cases over which the military judge had presided and the outcomes of those cases; and second, because the military judge placed on the record at the beginning of the trial a summary of his prior involvement in MTI cases. Appellant himself presented his counsel with photographs of the room in which the assault occurred and his counsel used those photographs to prepare his defense and to make tactical decisions about how best to represent him. We have reviewed the cross-examination of the witnesses and the presentation of the defense as a whole and see nothing to indicate that Appellant's counsel were deficient.

*Post-Trial Processing*

Finally, Appellant argues that he is entitled to relief based on two alleged post-trial processing errors. First, he asserts that new review and action are required because there is no evidence that the convening authority considered Appellant's submission before taking action. Second, he asserts that post-trial processing delays warrant relief.

Proper completion of post-trial processing is a question of law which we review de novo. *United States v. Sheffield*, 60 M.J. 591, 593 (A.F. Ct. Crim. App. 2004) (citing *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)).

With respect to his first claim, R.C.M. 1107(b)(3)(A) requires that before taking action on the findings and sentence, the convening authority shall consider, inter alia, any matters submitted by the accused during the clemency process. Pursuant to R.C.M. 1105 and during processing following our return of this case to the general court-martial convening authority, on 12 June 2015 trial defense counsel submitted his own letter and

an 11 June 2015 letter (and attachments) from Appellant to the convening authority. It is this letter that Appellant now claims was not reviewed by the convening authority.

We presume a convening authority has reviewed matters submitted by an Appellant if the staff judge advocate (SJA) prepared an addendum to the staff judge advocate's recommendation (SJAR) that (1) tells the convening authority of the matters submitted, (2) advises the convening authority that he must consider the matters, and (3) lists the attachments, indicating they were actually provided. *United States v. Gaddy*, 54 M.J. 769, 773 (A.F. Ct. Crim. App. 2001). That is precisely what happened in this case. The SJA prepared an addendum advising the convening authority that he must consider the matters submitted by Appellant before taking final action in the case, and then listed "Defense Counsel Ltr, dated 12 June 2015 (with Accused letter and attachments)" as attachments. Before us, Appellant appears to be asking that we create a rule requiring that each page in a multi-part document be specifically identified. We do not believe *Gaddy* contemplated such detail, nor do we believe such a blanket rule is necessary or appropriate.

With respect to his second claim, Appellant requests that we grant the "modest relief" of setting aside his punitive discharge because of post-trial processing delays. Thirty-five days elapsed between the convening authority's second action and the docketing of this case before this court. Under *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006), the record should have been docketed with this court within 30 days of the convening authority's action. Additionally, Appellant argues that the 740-day period between completion of trial and the convening authority's *second* action violates the 120-day *Moreno* standard applicable to that phase of post-trial processing.

We review de novo Appellant's claim that he has been denied his due process right to a speedy post-trial review and appeal. *Moreno*, 63 M.J. at 135. Because the 35-day period in this case is facially unreasonable, *see id*. at 142, we examine the claim under the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Moreno*, 63 M.J. at 135. If we are able to conclude directly that any error was harmless beyond a reasonable doubt, we do not need to engage in a separate analysis of each factor. *See United States v. Allison*, 63 M.J. 365, 370 (C.A.A.F. 2006).

*Moreno* identified three types of prejudice arising from post-trial processing delay: (1) oppressive incarceration; (2) anxiety and concern; and (3) impairment of ability to present a defense at a rehearing. *Id*. at 138–39. None are present or alleged in this case. While we agree that *Moreno* violations are unacceptable, we find beyond a reasonable doubt that Appellant was not harmed by the 35-day period from action to docketing and is thus not entitled to relief under *Moreno*.

We also disagree with Appellant's contention that the length of the *Moreno* violation in this case should be measured against the 740 days between conclusion of trial and the *second* action. Our superior court held that when a Court of Criminal Appeals issues a decision in a case within *Moreno* time standards, and further post-trial processing is necessitated because of the court's decision, the *Moreno* clock starts anew. *See United States v. Roach*, 69 M.J. 17, 22 (C.A.A.F. 2010); *see also United States v. Mackie*, 72 M.J. 135 (C.A.A.F. 2013). While we are not unsympathetic to Appellant's argument that the necessity for a second round of post-trial processing resulted from government error, rather than appellate clarification of matters of law, he has still failed to establish that he has been prejudiced by the delay.

However, that does not end the inquiry, as we may grant sentence relief under Article 66(c), UCMJ, even when we find no prejudice in unreasonable post-trial delays. *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002); *see also United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006) (finding delays were "such that tolerating them would adversely affect the public's perception of the fairness and integrity of the military justice system"). However, "[a]ppellate relief under Article 66(c) should be viewed as the last recourse to vindicate, where appropriate, an appellant's right to timely . . . review." *Tardif*, 57 M.J. at 225.

We have reviewed the entirety of the post-trial processing, including each of the steps identified by *Moreno* and the "non-exhaustive" list of factors we analyze when considering *Tardif* relief. *See United States v. Bischoff*, 74 M.J. 664, 672 (A.F. Ct. Crim. App. 2015). We do not believe *Tardif* relief is warranted under the facts of this case.

### *Conclusion*

The findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

LEAH M. CALAHAN
Clerk of the Court